BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| IN RE SNOWFLAKE DATA BREACH LITIGATION | MDL DOCKET NO. |
|---|---|

**PLAINTIFF EMMANUEL CHAIDEZ'S CORRECTED MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS TO THE DISTRICT OF MONTANA PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. §1407 and the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiff Emmanuel Chaidez ("Plaintiff") respectfully submits this Memorandum of Law in Support of his Motion for Transfer and Centralization of all currently filed federal cases listed in the Schedule of Actions, and any subsequently filed "tag along" actions to the District of Montana.

This is a typical "hub-and-spoke" data breach that occurred in April 2024 ("Data Breach"), expected to involve over one hundred "spokes"[1] and impacting hundreds of millions of people. The "hub" at the center of the Data Breach is Defendant Snowflake, Inc. ("Snowflake"), a publicly traded, Bozeman, Montana-based cloud computing software company with thousands of "spoke" customers. Montana is Snowflake's state of incorporation and headquarters, and it does significant business in Montana. A substantial portion of the events giving rise to Plaintiff's claims arise in Montana and key witnesses and documents are located there.

The first case naming Snowflake was filed in Montana on June 13, 2024. Thereafter, 13

---

[1] It is estimated there are at least 165 entities whose data was impacted in the Snowflake Data Breach, which are referred to herein as "Spokes" radiating from the "hub," Snowflake. *See* https://www.cnbc.com/2024/07/12/snowflake-shares-slip-after-att-says-hackers-accessed-data.html#:~:text=Mandiant%20wrote%20in%20a%20blog,exposed%20organizations%E2%80%9D%20of%20the%20incident.

additional actions naming Snowflake were filed in the District, and (so far) one outside this District, in the Northern District of Texas. Other spoke-defendants already sued in other districts scattered around the country because of their Snowflake relationship and connection to the Data Breach ("Spoke Cases") include, Ticketmaster LLC, Live Nation Entertainment, Inc., AT&T, Inc., AT&T Mobility, LLC, and Advance Auto Parts, Inc. ("Snowflake Spoke Defendants").[2] Snowflake is a named co-defendant in some. *See* Schedule of Actions*.* Plaintiff anticipates the filing of many more Spoke Cases in the coming weeks and months naming Snowflake and additional Snowflake Spoke Defendants.

The District of Montana is one of the least-congested federal districts. While not the most convenient forum for travel, that factor is less relevant today in light of the convenience and efficiency afforded by hearings held through online video conferencing for nearly all pretrial matters. Many MDLs efficiently operate without the need for regular in-person court appearances. Indisputably, the evidence of the Data Breach and Snowflake's central role, for which parties in all cases will certainly rely, is primarily located in Montana. Location of those key witnesses, documents, and information should be paramount for choosing the MDL district. This is why, in another well-known recent "hub-and-spoke" data breach MDL of comparable size, the Panel created an MDL and consolidated the related actions in the district where the "hub" is headquartered. *See In re MOVEit Customer Data Sec. Breach Litig.*, MDL No. 3083, 2023 WL

---

[2] There are 15 cases against Ticketmaster, Inc. and Live Nation Entertainment, Inc.: 13 are in the Central District of California, one is in the District of Montana, and one in the Eastern District of Pennsylvania. There are 13 cases against the AT&T entities: five in the District of Montana, three in the Southern District of California, one in the Central District of California, one in the Northern District of Georgia, one in the Western District of Washington, one in the Southern District of Florida, and one in the Northern District of Texas. There are ten cases against Advance Auto Parts, Inc.: nine pending in the Eastern District of North Carolina, and one in the Northern District of Illinois. There is one case against Cricket Wireless, LLC, in the Northern District of Georgia.

6456749 (U.S. Jud. Pan. Mult. Lit. Oct. 4, 2023) (consolidating 101 actions across 22 districts involving a data security breach arising from Progress Software's MOVEit software's vulnerability in the District of Massachusetts). The Panel should do the same here. Efficiency dictates transfer of all Related Actions to the District of Montana for pretrial proceedings and discovery.

## I. INTRODUCTION AND BACKGROUND

There are currently 48 Related Actions pending in 11 federal district courts (collectively "Related Actions") (Snowflake and Spoke Defendants collectively "Defendants"). All of the Related Actions assert similar claims arising from a common nucleus of operative facts: that Snowflake or the Snowflake Defendants failed to prevent a cyberattack that resulted in the theft and dissemination of over one hundred million individuals' sensitive personal information in April 2024.

Snowflake is a publicly-traded cloud computing data company that maintains a platform enabling data storage, processing, and analytic solutions for nearly 10,000 companies. These companies, including the Snowflake Spoke Defendants, use Snowflake's cloud platform to store and manage their data. According to the various Data Breach notices so far released by the Snowflake Spoke Defendants, the PII exposed includes, but is not limited to: names, addresses, email addresses, phone numbers, dates of birth, Social Security numbers, driver's license numbers, government ID numbers, and in the case of AT&T's data stored on Snowflake's cloud, location information from cellular tower records. In fact, the location records of *every* AT&T customer were affected by the breach of Snowflake's computer systems, which, on information and belief, were designed, maintained, and updated by Snowflake's executives and management in Montana. Furthermore, it is highly likely the terabytes of stolen data also contain sensitive Protected Health

Information ("PHI"), because Snowflake has a cloud product for its healthcare customers.[3]

## II. ARGUMENT

### A. Transfer of the Actions for Consolidation and Coordination Is Appropriate Under 28 U.S.C. § 1407 Because There Are Common Questions of Fact.

Under 28 U.S.C. § 1407(a), the Panel should transfer federal civil actions for pretrial coordination or consolidation where: (1) the cases involve "common questions of fact" and (2) the transfer is convenient for the Case parties and witnesses, and "promote[s] the just and efficient conduct of the cases." 28 U.S.C. § 1407(a). The purpose of the multidistrict litigation process is to "eliminate duplicative discovery, prevent inconsistent pretrial rulings on class certification and other issues, and conserve the resources of the parties, their counsel, and the judiciary." *See In re Folgers Coffee Mktg. & Sales Practices Litig.*, MDL No. 2984, 2021 U.S. Dist. LEXIS 63657, at *2 (J.P.M.L. Apr. 1, 2021). Because allowing the Related Actions to proceed independently would almost guarantee duplication of discovery, overlapping efforts, and risk inconsistent rulings, transfer and coordination for pretrial proceedings is necessary and appropriate. The Related Actions all involve common issues of fact—a massive data breach–centralization of which will promote the convenience of the parties and witnesses and the just and efficient conduct of the litigation. *See* 28 U.S.C. § 1407. Transfer and centralization will mitigate the possibility of inconsistent rulings, including rulings regarding class certification, and will promote the judicial economy by providing a single forum to which future filed tag-along actions can be transferred. The Panel should transfer and consolidate the instant cases in a single district because: (1) the Related Actions involve numerous common questions of fact and law; and (2) consolidation will be for the convenience of the parties and witnesses and will promote the just and efficient conduct

---

[3] *See* https://www.snowflake.com/en/solutions/industries/healthcare-and-life-sciences/patient-and-member-360/.

of this litigation. *See* 28 U.S.C. §1407.

This Panel has transferred and centralized a host of cases involving data security breaches similar to the one here, and usually to the state where the primary defendant is headquartered or has a substantial presence. *See In re MOVEit Customer Data Sec. Breach Litig.*, MDL No. 3083, 2023 WL 6456749 (U.S. Jud. Pan. Mult. Lit. Oct. 4, 2023) (consolidating 101 data breach actions across 22 districts actions in Massachusetts, where MOVEit is headquartered); *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 2023 WL 3829244 (J.P.M.L. 2023) (consolidating eleven actions across eight districts involving a data security breach of T-Mobile given T-Mobile's presence in Kansas City); *In re KeyBank Customer Data Sec. Breach Litig.*, 2023 WL 1811824 (J.P.M.L. 2023) (consolidating ten actions across at least three districts involving a data security breach of Key Bank given that co-defendant, Overby-Seawell Company, was headquartered in Atlanta); *In re Samsung Customer Data Sec. Breach Litig.*, 2023 WL 1811247 (J.P.M.L. 2023) (consolidating nine data security breach actions across four districts in New Jersey, where Samsung is headquartered).

Here, each Related Action arises from Defendants' negligent security practices when using Snowflake's cloud services. Each complaint filed alleges Snowflake's or the Snowflake Spoke Defendant's practices violate common law or state data privacy laws, or both, including the following common questions of fact:

    a. whether Snowflake or the Snowflake Spoke Defendants violated state common laws by failing to properly secure the sensitive PII (and likely PHI) of the various plaintiffs and the putative classes;

    b. whether Snowflake or the Snowflake Spoke Defendants violated state privacy laws by failing to properly secure the sensitive PII (and likely PHI) of the various plaintiffs and the putative classes;

    c. whether Snowflake or the Snowflake Spoke Defendants breached its contracts with various entities who entrusted them with Plaintiffs' and members of the putative

       classes as third-party beneficiaries of those contracts by failing to secure the PII (and likely PHI) of plaintiffs and the putative classes;

d. whether the proposed putative classes should be certified;

e. whether Snowflake and/or the Snowflake Spoke Defendants conduct caused injury to plaintiffs and members of the putative classes; and

f. the measure and amount of damages sustained by plaintiffs and other members of the putative classes, and the mandatory injunctive relief that should be imposed for future protection.

The factual and expert discovery concerning these common questions of fact will be substantially the same in all Related Actions.

      The Related Actions also share substantially similar legal theories and causes of action, as will future Related Actions. Plaintiff anticipates similar motion practice in all cases. Moreover, the proposed classes in the cases against each Snowflake Spoke Defendant overlaps with the proposed class in the cases against Snowflake. For all these reasons, the Related Actions will benefit from coordinated or consolidated pretrial proceedings through multidistrict litigation.

### B. The District of Montana Is the Most Appropriate Transferee Forum Under a Balancing of the Factors.

      The District of Montana is the most appropriate forum here. The selection of an appropriate transferee forum depends greatly on the specific facts and circumstances of the litigation being considered for consolidation. The decision involves a "balancing test based on the nuances of a particular litigation" that considers several factors, including the number of the underlying cases pending before the district, the experience of the judiciary with the issues, the location of documents and witnesses, the centrality of the location, and common parties. *See* Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214 (1977); *see also, e.g.*, *In re Regents of University of California*, 964 F.2d 1128, 1136 (Fed. Cir. 1992); Annotated Manual of Complex Litigation (Fourth), Chapter 20 (2010). Transfer is appropriate when it enhances the

convenience of the litigation as a whole. *See, e.g., In re Asbestos Prod. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 420 (J.P.M.L. 1991) (citing *In re Multidistrict Private Civil Treble Damage Litigation Involving Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L.1968) ("The Panel, however, must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law.")).

All Related Actions filed solely against Snowflake are pending in the District of Montana. The District of Montana is the most appropriate venue because: (1) Snowflake is incorporated under the laws of Montana and is headquartered in Montana, and a significant portion of the alleged conduct occurred here (including, based on information and belief, its servers); (2) it is a convenient forum because it is centrally located within the country; (3) it has the capacity and resources this litigation will require; and (4) an increasing number of the Related Actions pending outside the District of Montana also name Snowflake as a defendant.

### 1. The Presence of Defendant Snowflake in Montana Should Be the Key Factor for Transfer and Centralization.

In recent MDLs involving large-scale data security breaches, the Panel has often ruled the single most important factor in deciding where to send the MDL is the presence of key documents and witnesses at the headquarters of the primary defendant. *In re MOVEit* is a prime "hub-and-spoke" example. 2023 WL 6456749 at *3. Additionally, in *In re Samsung*, this Panel held "Defendant has its headquarters in New Jersey, where common witnesses and other evidence likely will be found." *In re Samsung Customer Data Sec. Breach Litig.*; 2023 WL 1811247 at *2. *See also In re Change Healthcare, Inc., Customer Data Sec. Breach Litig.*, MDL No. 3108, 2024 WL 2884723, at *2 (J.P.M.L. 2024) (assigning MDL to the district where eight actions were pending and three defendants were headquartered and therefore where "much of the relevant evidence will be found"); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1364

7

(J.P.M.L. 2020) ("Blackbaud has its headquarters in South Carolina. Thus, common witnesses and other evidence likely will be located in this district.").

Montana is the nexus of Snowflake's operations making it the Data Breach "hub." Documents, relevant witnesses (including its Co-Founder & President of Products, Chief Information & Data Officer, and Chief Information Security Officer) and other evidence for discovery are all located in Montana (meaning travel to Montana for depositions of the parties and, likely, third-party witnesses is inevitable), and transfer to Montana will streamline discovery and conserve the parties' resources. Thus, transfer to Montana is appropriate because Snowflake, the principal actor in the Data Breach, is located there, it serves the convenience of the parties, and will prevent duplicative discovery. *See In re 23andMe, Inc., Customer Data Sec. Breach Litig.*, MDL No. 3098, 2024 WL 156923, at *1 (J.P.M.L. 2024) ("Discovery in all actions will focus on how 23andMe's system was breached, how and when the breach was identified, what security measures 23andMe had in place, and what steps were taken after the data breach was discovered."); *In re MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749 at *3 ("While we are sympathetic to the convenience-based arguments made by some plaintiffs who sue only the defendant to which they entrusted their data, in deciding the question of centralization, we must consider the needs of all parties and view the litigation as a whole."); *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2873, 2023 WL 2875926, at *3 (U.S. Jud. Pan. Mult. Lit. Apr. 10, 2023) ("[T]ransfer is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay."); *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012) ("[W]e look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.").

The District of Montana has far more relevant documents and witnesses than the other districts where the Related Actions are pending (or will be filed) and, therefore, the Panel should not choose another district. For example, the Eastern District of North Carolina, despite being the venue for eight Related Actions against Snowflake Spoke Defendant Advance Auto Parts, Inc., likely has no evidence related to why Snowflake's system was breached or any information related to the other Spokes. In fact, central to the Data Breach litigation will be Snowflake's documents and information in Montana, whereas any single Snowflake Spoke Defendant's evidence, like Advance Auto Parts, Inc.'s in North Carolina, will only pertain to the claims against that Spoke and not advance the necessary coordinated or consolidated pretrial proceedings for all Related Actions.

2. **The District of Montana Is Conveniently Located.**

All actions filed against Snowflake alone are pending in the District of Montana; thus, it would be inconvenient if the MDL was anywhere else. Depositions of key Snowflake employees regarding the cloud platform from which the PII (and likely PHI) was exfiltrated will be taken in Montana and be relevant to all Related Actions. Montana is a growing hub for international business (particularly in the Information Technology industry, which underpins the modern economy),[4] and it possesses multiple international airports. This makes the District of Montana a convenient MDL location. *Cf. In re Power Morcellator Prod. Liab. Litig.*, 140 F. Supp. 3d 1351, 1354 (U.S. Jud. Pan. Mult. Lit. 2015) (centralizing in District of Kansas because it is "centrally located and easily accessible for all parties"). As noted above, many MDLs efficiently operate without the need for regular in-person court appearances and use video conferencing technology.

---

[4] *See, e.g.*, Blair Miller, *Montana's Headwaters Tech Hub gets $41M grant from feds*, DAILY MONTANAN (July 2, 2024), https://dailymontanan.com/2024/07/02/montanas-headwaters-tech-hub-gets-41m-grant-from-feds/.

### 3. The District of Montana Is Well-Equipped to Handle This MDL.

Additionally, the District of Montana possesses the necessary resources for MDL litigation. It is the least-congested of any of the districts where a Related Action is pending. During the 12-month period ending March 31, 2024, only 576 civil actions were pending, meaning the three active district judges had *only* a 192 civil case load.[5] As of last month, there are no MDLs in the District of Montana. In contrast, as described above, the other districts where significant numbers of Related Actions are pending, including the Central District of California and the Northern District of Texas, already have numerous pending MDLs, and in the case of the Northern District of Texas a recently-formed MDL involving a massive data breach against AT&T Inc. unrelated to Snowflake (where, in contrast to this case, AT&T is the sole defendant). *See In re AT&T Inc. Customer Data Sec. Breach Litig.*, MDL No. 3114, 2024 WL 2884429, at *1-2 (J.P.M.L. 2024) ("These putative class actions present common factual questions concerning an alleged data security breach announced by AT&T in March 2024 concerning the personal information of over 70 million former and current AT&T customers released on the dark web."). Thus, the District of Montana will be able to dedicate its resources to a Snowflake MDL of this magnitude.

In addition, the Honorable Brian Morris, Chief Judge of the District of Montana, who was assigned the first-filed case against Snowflake, is eminently qualified (and overdue) to preside over an MDL proceeding. A former law clerk to U.S. Supreme Court Chief Justice William Rehnquist who has been on the federal bench since 2013, Chief Judge Morris would efficiently shepherd the consolidated cases through complex pretrial discovery. Soo too would the other District Judges. Accordingly, the District of Montana is an appropriate choice for transfer and

---

[5] United States Courts, *Table C-1 U.S. District Courts–Civil Federal Judicial Caseload Statistics (Mar. 31, 2024)*, available at https://www.uscourts.gov/statistics/table-c-1/federal-judicial-caseload-statistics/2024/03/31.

consolidation.

### 4. Snowflake Has Been Sued in Related Actions Outside the District of Montana.

There are an increasing number of cases, including at least one Related Action listed in the Schedule of Actions, filed outside the District of Montana against a Snowflake Spoke Defendant, and also naming Snowflake itself as a defendant. This makes an MDL even more necessary than merely the common nucleus of fact centering on Snowflake, where there is a risk of inconsistent adjudications regarding Snowflake's own conduct. *See In re 23andMe, Inc., Customer Data Sec. Breach Litig.*, 2024 WL 156923, at *1 ("Centralization will avoid the possibility of inconsistent pretrial rulings, particularly with respect to class certification.").

## III. CONCLUSION

For the reasons set forth above, Plaintiff Chaidez respectfully requests this Panel transfer the Related Actions listed in the attached Schedule of Actions, as well as all subsequently-filed Related Actions, to the District of Montana for coordinated and consolidated pretrial proceedings.

Dated: July 29, 2024

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 332-4200
Email: ostrow@kolawyers.com

*Counsel for Plaintiff Emmanuel Chaidez (Chaidez v. Snowflake, Inc.,* No. 2:24-cv-00046 (D. Mont.))