**BEFORE THE
UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SNOWFLAKE, INC. DATA BREACH LITIGATION | : <br> : <br> : MDL DOCKET NO. 3126 <br> : |

**PLAINTIFF ERIN LEWIS' RESPONSE IN SUPPORT OF MOTION TO TRANSFER DATA BREACH CASES RELATED TO SNOWFLAKE IN THE DISTRICT OF MONTANA FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

**INTRODUCTION**

Plaintiff Erin Lewis respectfully submits this response in support of plaintiff Emmanuel Chaidez's motion under 28 U.S.C. §1407 to centralize the related cases against Snowflake, Inc. and its customers such as AT&T, Inc. in the District of Montana. *See* Doc. 1 in MDL No. 3126. The District of Montana is the most appropriate venue for this litigation. Snowflake is central to all the cases and is headquartered in Montana, and thus many of the key witnesses and documents are likely to be located there. Further, Chief Judge Brian Morris of the District of Montana has reassigned all pending and future cases involving Snowflake and data breach allegations in the District of Montana to his docket. Judge Morris is streamlining the litigation, and he has not had the opportunity to handle a multidistrict litigation proceeding. Further, there are no pending multidistrict litigation proceedings in Montana and the district has the docket statistics and resources available to adjudicate the Snowflake related data breach cases expeditiously.

## SUMMARY

Plaintiff Lewis filed a class action complaint in the District of Montana against Snowflake and Snowflake customer AT&T arising from a recent data breach that compromised her personal information. Plaintiff Lewis is not alone in filing a lawsuit against Snowflake, Snowflake and one of its clients, or a Snowflake client, as the Schedule of Actions attached to the MDL Motion attests. These cases are pending in several different districts.

Because there are common questions of fact across all the Snowflake related cases, their centralization will promote the just and efficient conduct of the actions and serve the convenience of the parties and witnesses. *See* 28 U.S.C. § 1407(a). The pending Snowflake related cases advance claims arising from largely identical allegations and involve several largely overlapping proposed classes of individuals whose personal information was compromised.[1] All named plaintiffs allege their personal information was exposed as a result of an unauthorized party gaining access to client information stored on Snowflake's cloud-storage system by AT&T and its other customers.

---

[1] For example, *Jessie Leal v. Ticketmaster, LLC, Snowflake, Inc. and Live Nation Entertainment, Inc.*, 2:24-CV-00046 proposes the following classes: "All individuals residing in the United States whose Private Information was compromised as a result of the Data Breach ('the Class'); and All individuals identified by Defendants (or their agents or affiliates) as being those persons residing in California impacted by the Data Breach (the 'California Subclass')." *Richard Olivieri and Lauren Woon v. AT&T, Inc., AT&T Mobility, LLC and Snowflake, Inc.*, 2:24-CV-00056 proposes the following classes: "All individuals residing in the United States whose Personal Information was compromised as a result of the Data Breach (Nationwide Class); All individuals residing in Florida whose Personal Information was compromised as a result of the Data Breach (the 'Florida Subclass'); and All individuals residing in California whose Personal Information was compromised as a result of the Data Breach. (the 'California Subclass')." *Charles McGee v. Advance Auto Parts, Inc.*, 5:24-CV-00352 proposes the following class: "All persons whose Private Information was actually or potentially accessed or acquired during the Data Breach event that is the subject of the Notice of Data Breach (the 'Nationwide Class')."

Given the extensive overlap in factual allegations relating to the data breaches involving Snowflake and its clients, the plaintiffs in each case likely will seek the same discovery relating, for example, to the security measures Snowflake and its clients used, how the alleged breach occurred, and the type and quantity of information compromised in the alleged intrusion. Centralization will minimize the burden of discovery on all parties and ensure that the parties do not face duplicative or inconsistent discovery obligations. Beyond discovery, motion practice in each of the separate cases would require multiple courts to evaluate common issues. Plaintiffs assert many of the same claims, and Snowflake and its clients will likely assert common defenses in all the Snowflake related cases. The claims and defenses should not be decided by different courts, and they will not be if the Panel centralizes the cases. Class certification is another question that should not have to be decided numerous times. Thus, centralization almost certainly will spare different courts from duplicative motion practice and the parties will benefit from the briefing and deciding of these issues once by a single judge.

## ARGUMENT

### I. TRANSFER TO A SINGLE DISTRICT FOR PRETRIAL PROCEEDINGS IS APPROPRIATE UNDER 28 U.S.C. § 1407

Under 28 U.S.C. § 1407(a), centralization is appropriate when (1) pending in different districts involve "one or more common questions of fact"; and (2) coordinated or consolidated pretrial proceedings "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of " such Snowflake cases. *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372, 1373 (U.S. Jud. Pan. Mult. Lit. 2023) (holding that centralization is appropriate if it would "eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification and *Daubert* motions; and conserve the resources of

the parties, their counsel, and the judiciary"). The Snowflake cases satisfy these requirements and should be transferred to the District of Montana for centralized proceedings.

A.   **The Snowflake Cases Involve Common Issues of Fact**

The first requirement for centralization is that the cases involve "common questions of fact." *See* 28 U.S.C. § 1407(a). Section 1407 "does not require a complete identity or even a majority of common factual issues as a prerequisite to centralization." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (citation omitted). The Panel has consistently consolidated data breach cases like the ones filed against Snowflake and its clients because there are inherent efficiencies in dealing with the common facts that exist in such cases.[2]

---

[2] *See, e.g.*, *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019); *In re KeyBank*, 655 F. Supp at 1372 (J.P.M.L. 2023); *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp at 1368 (J.P.M.L. 2023); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 544 F. Supp. 3d 1371, 1372 (J.P.M.L. 2021); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections."); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) ("Common factual questions are presented with respect to Uber's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) ("Common factual questions are presented with respect to Yahoo's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) ("Here, all actions stem from the same data breach, and we are persuaded that discovery concerning the breach, how and when it was identified, what security measures 21st Century had in place for securing patient data, and what steps it took after discovery of the breach will be common among the . . . actions and is likely to be complex and time-consuming.").

Illustrative is the recent decision by the Panel involving MOVEit. In May 2023, following the disclosure of a vulnerability in Progress Software Company's MOVEit file transfer services and a related breach in its network and systems that compromised plaintiffs' personally identifying information, plaintiffs whose information was potentially compromised filed 101 actions against Progress Software Company and its customers in 22 districts. *In re MOVEit Customer Data Security Breach Litigation*, 2023 WL 6456749, at *2 (J.P.M.L. Oct 4, 2023). In transferring the cases to one district, the Panel stated that "[a]ll actions can be expected to share common and complex factual questions as to how the MOVEit vulnerability occurred, the circumstances of the unauthorized access and data exfiltration, and Progress's response to it, as well as the response of various downstream MOVEit users and customer-facing defendants with whom plaintiffs did business." The Snowflake situation is similar to MOVEit.

The Snowflake related cases share numerous factual allegations. Plaintiffs claim that Snowflake or its clients failed to adequately protect their personal data from a security breach in violation of various statutes and state common law, and all seek certification of similar classes. If the Snowflake related cases were to proceed separately, multiple courts would be required to address common factual issues. When "the actions stem from the same data breach, and there is significant overlap in the central factual issues, parties, proposed classes, and claims . . . creation of a single MDL is warranted." *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019). For example, last year the Panel consolidated cases related to a data breach involving a bank, holding that they presented common factual questions concerning the alleged breach, such as how the defendant's system was breached, what security measures the defendant had in place to protect against such a

breach, what information was compromised in the breach, and whether the defendant provided timely notice of the breach to its clients. *In re KeyBank*, 655 F. Supp at 1372–73.

Based on the complaints, similar factual issues will arise in the cases against Snowflake and its clients, such as whether Snowflake or its client was negligent, whether Snowflake or its clients breached their contracts, and whether Snowflake or its clients violated state laws. Moreover, the nature of the defenses in this case, as well as the consistency of a single ruling as to such defenses, is a strong ground supporting centralization. Plaintiff expects that Snowflake and each other defendant will raise the same defenses to each action at the motion to dismiss and, if necessary, class certification and summary judgment stages to defeat liability and damages. *See, e.g.*, *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 24 F. Supp. 3d 1366, 1367 (J.P.M.L. 2014) (noting cases will involve similar defenses); *In re Nebivolol (%2C040) Patent Litig.*, 867 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012) (similar). Centralization will make this process much more efficient.

### B.   Centralization Will Promote the Convenience of the Parties and Witnesses and Judicial Efficiency

Transfer and centralization are necessary to avoid duplicative discovery, inconsistent pretrial rulings, and waste of judicial and party resources. *See, e.g.*, *In re KeyBank*, 655 F. Supp at 1372. Because all the Snowflake related cases are still in their infancy and there is substantial overlap of factual allegations, transfer will create substantial efficiencies for the parties and the courts. *See In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1386 (J.P.M.L. 2020) (granting transfer).

First, all the Snowflake cases are at an incipient stage. *See, e.g.*, *In re Generic Pharm. Pricing Antitrust Litig.*, 2017 WL 4582710, at *2 (J.P.M.L. 2017) (noting there is "ample scope to eliminate duplication and enhance the convenience of the parties, the witnesses, and the courts

through coordinated proceedings in the MDL" where cases had not advanced beyond motion to dismiss); *Nine W.*, 464 F. Supp. 3d at 1386 (reasoning that "there has been no significant activity in any action such that transfer to another district would disrupt its efficient progress").

Second, the creation of a Snowflake data breach MDL will facilitate efficient discovery and case administration given the same or similar allegations. If one or more consolidated complaints were to be filed in the transferee district, then Snowflake and the other defendants could address their arguments for dismissal of all claims and only a single district court would be required to spend time deciding motions to dismiss.

Centralization of the Snowflake related cases before a single court will also allow a seasoned federal judge to "formulate a pretrial program" to avoid unnecessary duplication of discovery efforts. *See In re U.S. Foodservice, Inc., Pricing Litig.*, 528 F. Supp. 2d 1370, 1371 (J.P.M.L. 2007). This will conserve the resources of: (1) the plaintiffs, who will not each need to serve their own sets of discovery for each individual action; (2) Snowflake and its clients, which will not have to respond to multiple duplicative sets of discovery and have their employees and experts deposed multiple times on the same issues; and (3) the judiciary, which will not be burdened with multiple duplicative motions, and potentially trials, risking inconsistent results.

Because the Snowflake related cases share common factual allegations about the nature of the alleged data breach and Snowflake's and its clients' conduct, there would be substantial overlap as to: (1) gathering and producing of documentary evidence, (2) deposing the same or substantially identical witnesses, and (3) disclosing and deposing experts on the same subject matters. *See, e.g.*, *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the cases shared "a common factual core"). Having the courts in at least 44 different lawsuits in different

districts where the defendants will make similar or identical motions to dismiss on certain identical issues would be inefficient. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 831 F. Supp. 2d 1371, 1371 (J.P.M.L. 2011) (noting "[m]otions to dismiss likely will be similar in these actions" and ordering transfer and consolidation).

Third, like the plaintiffs in *MOVEit*, plaintiffs here are people whose personal information was potentially compromised who have brought claims for largely overlapping nationwide or statewide classes of persons affected by the data breach. The specter of overlapping or inconsistent class certification decisions increases the utility of transfer and centralization in a single forum.[3]

### C. The Presence of Varying Defendants is Not a Barrier to Centralization

Even where cases "undoubtedly involve several non-overlapping defendants and raise defendant-specific issues," the Panel has granted transfer where they "all rest on the same core set of facts[.]" *In re FTX Cryptocurrency Exch. Collapse Litig.,* 677 F. Supp 3d 1379, 1380 (J.P.M.L. June 5, 2023) (granting centralization); *see also In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1354 (J.P.M.L. 2018) (granting centralization of data breach cases including sole action involving co-defendant); *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 338 F. Supp. 3d 1347, 1349 n. 2 (J.P.M.L. 2018) (rejecting defendants' arguments that they "will suffer prejudice from centralization because their case-specific facts will be 'lost in the mix' with hundreds of other

---

[3] *See, e.g.*, *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 677 F. Supp 1366–67(J.P.M.L. 2023) (centralization of data breach cases would "prevent inconsistent pretrial rulings, including with respect to class certification"); *In re Inclusive Access Course Materials Antitrust Litig.*, 2020 WL 4670703, at *1 (J.P.M.L. 2020) (consolidating actions involving non-overlapping classes); *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 26 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("[c]entralization will . . . prevent inconsistent pretrial rulings (particularly as to class certification)").

defendants"); *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 988 F. Supp. 2d 1364, 1365–66 (J.P.M.L. 2013) ("although we agree that these actions present some individualized factual issues, the existence of such issues does not negate the common ones…"). Additional parties are "essentially case management concerns that transferee judges routinely are called upon to address." *In re Customs*, 338 F. Supp. 3d at 1349, n. 2. Further, as a management tool the Panel can "separate[] and remand[] cases on a per-defendant basis." *In re Nat'l Prescription Opiate Litig.*, 576 F. Supp. 3d 1378, 1380 (J.P.M.L. 2021) (collecting cases).

For example, in *In re KeyBank*, the Panel granted centralization of six data breach cases. 655 F. Supp at 1373. The cases shared factual issues relating to an "incident in which an 'unauthorized external party' gained remote access to Overby-Seawell Company's ("OSC's") "network and acquired certain personally identifiable information of OSC's financial institution clients' customers." *Id*. OSC was a common defendant in all the cases. *Id*. All the cases subject to the MDL motion and two potential tag-along cases also named OSC's client KeyBank as a co-defendant, and two potential tag-along cases named OSC's client Fulton Bank as a co-defendant. *Id*. "At oral argument, counsel for plaintiffs … argued that the actions naming Fulton Bank should not be included in the MDL." *Id.* The Panel declined to address the argument as the two potential tag-along cases were not before it but stated "[w]e are inclined to believe that the MDL should include all actions naming OSC and involving its July 2022 data breach, regardless of which, if any, financial institution is named as a co-defendant." *Id.*

Similarly, in *In Re MOVEIt* the Panel acknowledged that "Progress, direct users of MOVEit software, and customer-facing companies (many of whom did not use MOVEit software but instead contracted or subcontracted with a company that did) are alleged to be responsible for the compromise of plaintiffs' PII and are named in varying combinations among

the overlapping putative class actions." 699 F. Supp at 1405 (J.P.M.L. 2023). In centralizing all the cases, the Panel recognized that "[d]isentangling the allegations against Progress (and, in many cases, direct users of MOVEit software like PBI and IBM) from the allegations against other defendants in the same case seems impracticable, if not impossible, under Section 1407(a)." *Id* at 1405–1406.

Here, the presence of defendants that used Snowflake's cloud-storage services is no reason to reject centralization. Indeed, the common issues of fact and law across all the cases relating to the data security failure involving Snowflake and its clients show the need for centralization here. The common thread among the Snowflake related cases is infiltration of data maintained by Snowflake for its clients. Accordingly, the Panel should centralize all Snowflake related cases, regardless of the presence of several different defendants in addition to Snowflake.

> **D.    Section 1404 Transfers or Informal Coordination Would Be Unlikely to Achieve   the Comparable Convenience, Efficiencies, and Consistent Rulings Possible in an MDL**

As discussed above, consolidation pursuant to Section 1407(a) would be convenient for the parties and efficient for the courts. The same level of convenience and efficiency are far less certain through the transfer of individual cases under Section 1404 or through informal coordination. That is true because there is no guarantee that a particular 1404 motion would be granted, leaving the prospect that two or more courts would have to contend with identical issues arising out of the same cluster of operative facts and additional cases could be filed. *See In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380–81 (J.P.M.L. 2013). As to potential Section 1404 transfer motions, there is no "reasonable prospect" that such motions would "eliminate the multidistrict character of the litigation." *Id*.

Here, the facts also support centralization. It does appear that any Section 1404 motions have been filed. Even if a Section 1404 motion were to be filed, asking separate district courts to exercise their discretion under Section 1404 to transfer the cases involving Snowflake or its clients to another district would not only require briefing in each court and use of judicial resources in deciding the motions, it would provide no assurance that each court would order transfer of each case, or when. If a court elected to deny a 1404 motion, then the benefits of convenience, efficiency, and consistent rulings that are achievable through 1407 centralization would be lost.

Second, there are numerous cases involving Snowflake and its clients in several districts and tag-along Snowflake cases are certainly possible. *See In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1359 (J.P.M.L. 2020) (rejecting consolidation via Section 1404 transfers and noting that "with six potential tag-along actions already on file, the possibility of additional actions cannot be discounted"); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) (granting transfer and finding informal coordination would not be practical in where "more than two million patients affected by the data breach, additional tag-along actions also may be forthcoming").

Centralization is also preferable to informal coordination because Snowflake is either a defendant or central figure in the cases on the Schedule of Actions, and discovery will undoubtedly overlap. A single judge is able to conduct orderly pretrial proceedings and make consistent rulings on discovery disputes, motions, and issues relating to experts. *See In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 249 F. Supp. 3d 1357, 1359–60 (J.P.M.L. 2017) (granting transfer). Only centralization can achieve this goal. *See In re Generic Pharm.*, 2017 WL 4582710, at *2 ("informal coordination and cooperation among the parties and courts"

is not "sufficient to eliminate the potential for duplicative discovery, inconsistent pretrial rulings, and conflicting discovery obligations").

## II. THE DISTRICT OF MONTANA, AND CHIEF JUDGE BRIAN MORRIS, ARE THE MOST APPROPRIATE TRANSFEREE DISTRICT AND JUDGE FOR THIS MDL

When deciding the appropriate transferee district for an MDL, the Panel considers, among other things: (1) the location of evidence, witnesses, and parties and (2) the ability to manage the MDL, together with the district's familiarity with the cases and interest in serving as the transferee forum. *See, e.g.*, *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 325 F. Supp. 3d 1362, 1364 (J.P.M.L. 2018) (transfer to district where Facebook is headquartered and relevant evidence and witnesses are likely to be located). Each of these factors favors transfer of the Snowflake related cases to the District of Montana and Judge Morris.

### A. The Litigation's Center is the District of Montana

One of the most important considerations in selecting an appropriate transferee forum is determining which forum has the strongest "nexus" to the litigation. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005). A key factor in determining the strength of the nexus is the presence of a defendant's headquarters in the proposed district.[4] In this case, defendant Snowflake is headquartered, and most of the key Snowflake witnesses and evidence are located, in Montana.

---

[4] *See, e.g.*, *In re Delphi Corp.* 403 F. Supp. 2d at 1360 (district where documents and witnesses likely to be found and where defendant had its principal place of business had "significant nexus to the litigation"); *In re Nine W.*, 464 F. Supp. 3d at 1385 (finding that defendants headquarters was the "litigation's center of gravity"). This is particularly true in cases involving allegations of a data breach. *See, e.g.*, *In re Marriott Int'l, Inc.*, 363 F. Supp. 3d at 1374–75 (selecting district where defendant "is headquartered . . . and relevant documents and witnesses thus likely will be found there"); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1326 (J.P.M.L. 2017) (same); *In re Yahoo! Inc.*, 223 F. Supp. 3d at 1354-55 (same); *In re 21st*

Even if Snowflake was not a defendant or important component in each case does not alter the fact Montana is central to the litigation. First, Snowflake is a named defendant in 16 of the 43 cases on the Schedule of Actions and the vulnerability of Snowflake's system is one of the main points of this litigation. Certainly, all the cases arising out of the Snowflake data breach will require discovery from Snowflake concerning the security measure it took to protect plaintiffs' and the class members' personal information. Snowflake, based in Montana, can therefore be considered central to all the cases.

   **B.**  **The District of Montana is the Most Appropriate MDL Venue**

The District of Montana will be able to manage a multidistrict litigation involving the issues here efficiently. The Panel often looks to a transferee forum "with the capacity and experience to steer [the] litigation on a prudent course." *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361–62 (J.P.M.L. 2004). *See also In re: Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, 896 F. Supp. 2d 1339, 1340–41 (J.P.M.L. 2012); *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) (transferring to a district court that "possesse[d] the necessary resources, facilities, and technology" to handle the matter).

As noted above, on July 31, 2024, Chief Judge Brian Morris ordered that all cases in which Snowflake was a defendant in that district be reassigned to him, and directed the clerk to assign any future cases filed against Snowflake with similar allegations to himself. *See E.g.*, Doc. 10 in Case No. 2:24-cv-00055-BMM. The reassigned cases included plaintiff Lewis' action, *Lewis v. Snowflake.* et al., Case No. 2:24-cv-00064-JTJ. Judge Morris was appointed to the court in 2013 and has served as the Chief Judge from 2020 to the present.

---

*Century*, 214 F. Supp. 3d at 1358 (same); *In re: Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 867 F. Supp. 2d 1357, 1358 (J.P.M.L. 2012) (same).

In addition to Chief Judge Morris being eminently qualified to preside over an MDL proceeding, Montana's case statistics also render it a suitable transferee venue. The District of Montana has only 206 civil filings per authorized judgeship for the 12 months ended June 30, 2024.[5] The District of Montana has only 1159 pending cases and no MDLs. The median time interval from filing to disposition of civil cases terminated by the District of Montana is a prompt 10.4 months.

## CONCLUSION

All the requirements for transfer under §1407 of the Snowflake related data breach cases are satisfied in this case. Therefore, plaintiff Lewis respectfully requests that the Panel centralize the Snowflake related data breach actions in the District of Montana before the Honorable Chief Judge Brian Morris.

---

[5] United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2024.pdf at pg. 72.

Respectfully submitted,

| | |
|---|---|
| James A. Francis<br>**FRANCIS MAILMAN SOUMILAS, P.C.**<br>1600 Market Street, Suite 2510<br>Philadelphia, PA 19103<br>(T) 215-735-8600<br>(F) 215-940-8000<br>jfrancis@consumerlawfirm.com<br><br>Kevin Laukaitis<br>**LAUKAITIS LAW LLC**<br>954 Avenida Ponce De Leon<br>Suite 205, #10518<br>San Juan, PR 00907<br>T: (215) 789-4462<br>klaukaitis@laukaitislaw.com | /s/ *William E. Hoese*<br>William E. Hoese<br>Joseph C. Kohn<br>Zahra R. Dean<br>Elias A. Kohn<br>**KOHN, SWIFT & GRAF, P.C.**<br>1600 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>(T) 215-238-1700<br>(F) 215-238-1968<br>whoese@kohnswift.com<br>jkohn@kohnswift.com<br>zdean@kohnswift.com<br>ekohn@kohnswift.com<br><br>John Heenan<br>**HEENAN & COOK**<br>1631 Zimmerman Trail<br>Billings, Montana 59102<br>Tel: (406) 839-9091<br>john@lawmontana.com |

*Attorneys for Plaintiff Erin Lewis*