**BEFORE THE**
**UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

In re:

**SNOWFLAKE, INC., DATA SECURITY**
**BREACH LITIGATION**

**MDL No. 3126**

### RESPONSE OF INTERESTED PARTY, FAISAL MOLEDINA, TO MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS

Interested Party Faisal Moledina ("Plaintiff"), Plaintiff in *Moledina v. Live Nation Entertainment, Inc., et. al.*, Case No. 2:24-cv-04631-JLS-MRW (C.D. Cal.), agrees that the currently filed cases and any tag-along cases subsequently filed involving similar facts or claims (collectively, the "Actions") should be transferred and centralized for pretrial coordination or consolidation. However, the Panel should transfer the Actions to the Central District of California because it will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation, making it the most appropriate forum.

First, Snowflake, Inc. ("Snowflake") was founded in San Mateo, California, and originally headquartered there until May 2021 when it changed its principal executive office (during COVID-19) to Bozeman, Montana.[1] Snowflake currently considers itself without a single headquarters,[2] and many of its employees, data servers, and other relevant evidence are still believed to be in

---

[1] Jordan Novet, *Snowflake Moves Executive Office from California to Bozeman, Montana*, CNBC (May 26, 2021, 3:14 PM), https://www.cnbc.com/2021/05/26/snowflake-moves-executive-office-from-california-to-bozeman-montana.html ("For purposes of this [SEC] report, we have designated our office in Bozeman, Montana as our principal executive office, as that is where our Chief Executive Officer and Chief Financial Officer are based.").

[2] *Id.* ("While San Mateo continues to remain an important location for us, we do not have a single office that is at the center of Snowflake's operations.").

California.[3] Snowflake's website identifies the following six locations: 1) San Mateo, California; 2) Toronto, Canada; 3) Amsterdam, Netherlands; 4) Berlin, Germany; 5) Warsaw, Poland; and 6) Pune, India.[4] The California location is the only U.S. venue Snowflake identifies under locations on its website, and the Bozeman, Montana office is not on the list:



Second, the overwhelming majority of class members, reported to be 560 million customers worldwide, are all customers of Ticketmaster LLC and Live Nation Entertainment, Inc. (collectively, "Ticketmaster"), which are headquartered in Los Angeles County, California. Given that California is the most populated State, and the Counties of Los Angeles, Orange, Riverside, and San Bernardino all reside within the Central District of California and are four of the five most populated counties in California, the Central District of California is almost certainly where the largest number of victims reside. California also has the California Consumer Privacy Act, Cal. Civ. Code section 1798.100, *et seq.* ("CCPA"), which provides that these California residents are

---

[3] *Id.* ("Snowflake will still have a large operation in Silicon Valley, and even went through a recent massive redesign of its San Mateo office to prepare for the eventual return of employees.")

[4] Snowflake, Inc., U.S. Office Locations, https://careers.snowflake.com/us/en/locations (last visited Aug. 20, 2024).

entitled to the greater of statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater. *See* Cal. Civ. Code § 1798.150(b). The CCPA will be the driving force behind the Actions brought by consumers against companies operating in California like Ticketmaster and AT&T, among other Defendants.

Third, based on the alleged mechanism of the data breach, including the allegations that corporate entities like Ticketmaster failed to implement multi-factor authentication, resulting in their customers' personally identifiable information being acquired, Ticketmaster itself, rather than Snowflake, will have the most pertinent witnesses and evidence relevant to greatest number of class members who are the victims of the data breach.

Fourth, of the 24 cases presently pending in California, 19 are in the Central District of California.[5] Given the District of Montana has 20 pending cases, this factor does not heavily favor either District.

Finally, the Central District of California has many highly respected and experienced jurists, including the Hon. Josephine L. Staton, the Hon. Sherilyn Peace Garnett, and the Hon. Fernando M. Olguin, who each presently preside over at least one of the Actions. The Central District of California is also easily accessible for all parties as it has numerous airports, including

---

[5] All filings presented in this Response are current as of August 19, 2024. In addition to the 20 California cases listed on the JPML Court's MDL Case Report, there are an additional four related actions pending in California: *Brain v. Live Nation Entertainment, Inc.*, Case No. 2:24-cv-06125-SPG-JC (C.D. Cal.); *Rehn v. AT&T Inc.*, Case No. 2:24-cv-06224-FMO-E (C.D. Cal.); *Elliott v. AT&T, Inc.*, Case No. 3:24-cv-01282-AJB-DEB (S.D. Cal.); and *Moses v. AT&T, Inc.*, Case No. 3:24-cv-01283-TWR-MMP (S.D. Cal.). There is also one additional related action pending in Florida (*Cancino v. AT&T Corporation*, Case No. 0:24-cv-61279-WPD (S.D. Fla.)), and one additional case pending in Alabama (*Doe v. Ticketmaster, LLC*, Case No. 5:24-cv-00980-CLM (N.D. Ala.)).

Los Angeles International Airport, Long Beach Airport, John Wayne Airport, and Ontario International Airport, among others conveniently located in Southern California.

## FACTUAL BACKGROUND

The Actions all arise out of a massive data breach impacting customers of several large enterprises, including approximately 560 million customers of Ticketmaster, 110 million customers of AT&T, Inc. and AT&T Mobility, LLC (collectively, "AT&T"), 10 million customers of Cricket Wireless, LLC ("Cricket Wireless"), 2.3 million customers of Advance Auto Parts, Inc. and Advance Stores Co., Inc. (collectively, "Advance Auto Parts"), at least 64,000 customers of Neiman Marcus ("Neiman"), and likely hundreds of customers of Snowflake (the "Data Breach"). Specifically, a financially motivated threat actor identified as UNC55377 obtained access to multiple organizations' Snowflake customer instances via stolen customer credentials. The credentials were predominantly acquired from multiple infostealer malware campaigns, which ultimately allowed the threat actor to gain access to the affected customer accounts which were not configured with multi-factor authentication, export the personally identifiable information of hundreds of millions of individuals across multiple companies, and attempt to sell much of that information on cybercriminal forums.

## LEGAL STANDARD

Actions containing allegations with common questions of fact may be transferred and consolidated or coordinated pursuant to Section 1407 if transfer will facilitate the convenience of the parties and witnesses and will promote the just and efficient conduct of the transferred cases. 28 U.S.C. § 1407. The Panel typically considers four factors in deciding whether to transfer a case under Section 1407:

     a.      the elimination of duplication in discovery;

     b.      the avoidance of conflicting rules and schedules;

    c.      the reduction of litigation cost; and

    d.      the conservation of the time and effort of the parties, attorneys, witnesses, and courts.

*See* Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (U.S. Jud. Pan. Mult. Lit. 1968)). When determining the appropriate transferee district, the Panel considers the following factors:

    a.      where the largest number of cases are pending;

    b.      where discovery has occurred;

    c.      where cases have progressed furthest;

    d.      the site of the occurrence of the common facts;

    e.      where the cost and inconvenience will be minimized; and

    f.      the experience, skill, and caseloads of the available judges.

*See id.* § 20.131.

## ARGUMENT

### I.     The Actions Satisfy the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407.

Pretrial transfer and consolidation under Section 1407 is appropriate. Given each of the Actions originally arise from stolen Snowflake customer credentials, consolidation and centralization pursuant to 28 U.S.C. § 1407(a) "will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to motions to dismiss and Daubert motions; and conserve the resources of the parties, their counsel, and the judiciary." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 637 F. Supp. 3d 1377, 1378 (U.S. Jud. Pan. Mult. Lit. 2022); *see also In re: Home Depot, Inc. Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398, 1399 (J.P.M.L. 2014) (centralization "will eliminate duplicative discovery; prevent

inconsistent pretrial rulings, particularly with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.").

A.     **The Actions Involve Common Questions of Fact.**

In assessing the appropriateness of consolidation under Section 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present. The Actions present common questions of fact. Each Action is based on allegations that Defendants, each of them, allowed the Data Breach to occur, predominantly by failing to utilize multifactor authentication and other industry standard security measures, exposing the personally identifiable information of millions of their respective customers to unauthorized parties in violation of numerous consumer protection statutes. Every class member could bring a claim against Snowflake; and Ticketmaster, AT&T, Advance Auto Parts, Cricket Wireless and Neiman may bring a third-party claim against Snowflake. As Snowflake is at the core of all cases, centralization is appropriate. *See In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402, 1405 (U.S. Jud. Pan. Mult. Lit. 2023).

While the answers to common questions may vary for each Defendant and not every Class member has a claim against each Defendant (e.g., Ticketmaster customers do not necessarily have a claim against AT&T), "[t]hat individualized factual issues may arise in each action does not—especially at this early stage of litigation—negate the efficiencies to be gained by centralization." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 637 F. Supp. 3d 1377, 1378 (U.S. Jud. Pan. Mult. Lit. 2022); *In re: Watson Fentanyl Patch Prod. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (U.S. Jud. Pan. Mult. Lit. 2012) ("While we are aware that centralization may pose some inconvenience to some parties, in deciding issues of transfer under Section 1407, we look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.") (citation omitted). As such, common questions of fact warrant centralization.

**B.      The Parties Face Duplicative Discovery and Inconsistent Rulings Absent Transfer and Consolidation.**

The allegations of all the cases are substantially similar and they all turn on the same factual questions, namely whether each Defendant's data security policies, practices, and procedures allowed for unauthorized parties to acquire putative class members' personally identifiable information. As such, the parties face duplicative discovery and inconsistent ruling absent consolidation. This is an important consideration for the Panel in that transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (U.S. Jud. Pan. Mult. Lit. 1980); *see also In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (U.S. Jud. Pan. Mult. Lit. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification).

The parties in these actions will necessarily engage in duplicative discovery, especially with respect to Snowflake. All plaintiffs will be seeking similar documentation and data from the Defendants in the Actions and will likely depose similar witnesses. As for Snowflake, those documents and data are almost certainly going to be identical and predominantly found in California. Defendants will likely raise similar jurisdictional challenges with respect to Article III standing, class certification and discovery objections, seek similar protective orders, and assert the same privileges in each case. However, if the Panel transfers and consolidates the cases, the parties will coordinate their efforts and thus save all parties—and the courts—time and money.

Because of the similarity of the allegations in the Actions, and the likelihood that future filed actions will contain similar allegations, the possibility of inconsistent rulings on pretrial

motions is substantially increased. Defendants are likely to present the same pretrial motions—including FRCP 12(b)(1), 12(b)(6), and summary judgment motions—in each action and assert the same or similar discovery objections and privileges. Inconsistent rulings on those dispositive motions would pose a serious problem in that the Actions may seek to certify overlapping classes. In addition, because of the similarity in the allegations, Defendants will assert the same defenses in opposition to the plaintiffs' claims, creating a real risk of inconsistent pretrial rulings. In light of this risk, it would be in the best interests of all involved—the parties, the witnesses, and the courts—to transfer and centralize these actions.

### C.   There Are a Sufficient Number of Actions to Support Transfer and Centralization.

Plaintiff is presently aware of 69 cases pending in federal court, with additional cases likely to follow. The Panel has ordered centralization of three or fewer cases. *See In re Wireless Telephone Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (U.S. Jud. Pan. Mult. Lit. 2002) (granting transfer and centralization of three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge).

## II.   The Central District of California is the Most Appropriate Transferee Forum.

Under the circumstances, the Central District of California is arguably the most appropriate and best-equipped option for centralizing the Actions. Upon balance, the factors traditionally considered by the Panel weigh in favor of the Central District of California as the forum where the Actions should be heard.

The first factor equally supports the Central District of California and the District of Montana as they each have the greatest number of cases filed, 19 and 20, respectfully. However, the very first Action (*Ryan v. Ticketmaster, LLC et al.*, Case No. 2:24-cv-04482-SPG-JC) was filed in the Central District of California, which is a consideration. *See In re Volkswagen "Clean*

*Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 148 F. Supp. 3d 1367, 1369 (U.S. Jud. Pan. Mult. Lit. 2015) ("There are 30 actions pending in the Northern District of California, including the first-filed case in the nation, and plaintiffs have filed a total of 101 cases in the state of California—nearly a fifth of all cases filed nationwide."). Judge Garnett is presently presiding over that Action, and a motion to consolidate and appoint leadership for the Ticketmaster cases is set to be heard on August 28, 2024. California also has the greatest number of cases presiding in its Districts.

The second and third factors, which consider where discovery has occurred and where the cases have progressed the furthest, are not very relevant given that discovery has not commenced in any of the Actions.

Although the fourth factor may support a number of districts given the number of Defendants involved, it does favor the Central District of California. In May 2021, Snowflake moved its principal executive office for SEC filing purposes to Bozeman, Montana, because it is where its Chief Executive Officer and Chief Financial Officer are based, but it "do[es] not have a single office that is at the center of Snowflake's operations."[6] However, Snowflake was founded in San Mateo, California, and still has a "large operation in Silicon Valley, and even went through a recent massive redesign of its San Mateo office to prepare for the eventual return of employees."[7] Moreover, San Mateo is still the first office location listed on Snowflake's website[8] and, of its nine United States "contact" addresses Snowflake provides, only California has more than one location (San Mateo, California and Dublin, California).[9]

---

[6] *See supra* note 1.
[7] *Id.*
[8] *See supra* note 4.
[9] Snowflake, Inc., Contact Information, https://www.snowflake.com/en/contact/ (last visited Aug. 20, 2024); *see supra* note 1 ("The address Snowflake lists as its office in Bozeman, a city with

Importantly, Ticketmaster—who by far has the greatest number of customers involved in the Data Breach—is headquartered in California, which has the largest population of any state. AT&T is headquartered in Texas, Advanced Auto Parts is headquartered in North Carolina, Cricket Wireless is headquartered in Georgia, Neiman is headquartered in Texas, and, again, Snowflake has no headquarters. Likewise, given the nature of the Data Breach, substantially more entities are likely affected from across the country. For instance, one entity that recently announced it was affected by the Data Breach, LendingTree subsidiary QuoteWizard, resides in North Carolina. Thus, in looking at where the Defendants reside, the fourth factor arguably supports the Central District of California because it is where Ticketmaster is located, Snowflake was founded and previously headquartered (though it now operates without headquarters), and other entities such as AT&T and Neiman operate within that District.

As for the fifth factor, the Central District of California is a convenient venue with numerous airports, including Los Angeles International Airport and Long Beach Airport in Los Angeles County, John Wayne Airport in Orange County, and Ontario International Airport in San Bernardino County, among others throughout Southern California, allowing easy access to the Central District of California from anywhere in the country. The Central District of California also has numerous hotel accommodations, large enough to host numerous lawyers for all parties presently involved and parties that may be implicated in the future. Many of the law firms involved in the litigation, on both the defense and plaintiff side, also maintain offices within the Central District of California. As the Actions likely involve plaintiffs from all 50 states, the ease of travel for counsel and witnesses is an important consideration, and this factor overwhelmingly favors the

---

fewer than 50,000 residents, is located downtown, near a post office branch, a bowling alley and a coffee shop, according to Google Maps.")

Central District of California as the most appropriate transferee forum.

Finally, the Central District of California has some of the most experienced and skilled jurists in the country to preside over this case, including the following:

- Hon. Josephine L. Staton who is presiding over Plaintiff's case, successfully presided over *In Re: Vizio, Inc., Consumer Privacy Litigation*, MDL No. 2693, and presently is not presiding over any Multidistrict Litigations;

- Hon. Sherilyn Peace Garnett who is overseeing the most Ticketmaster cases, including the first filed case where a motion to consolidate and appoint leadership is pending, and presently is not presiding over any Multidistrict Litigations; and

- Hon. Fernando M. Olguin who has significant class action and complex litigation experience and is presently not presiding over any Multidistrict Litigations.

Additionally, according to the United States District Courts' National Judicial Caseload Profile as of June 2024, for median time from filing to disposition in civil cases, the Central District of California ranks 3rd in the U.S. and 1st in the Ninth Circuit, whereas the District of Montana ranks 80th in the U.S. and 11th in the Ninth Circuit.[10] Thus, this factor also heavily favors transfer and centralization in the Central District of California.

## CONCLUSION

Based on the forgoing, Plaintiff agrees with Movant that the Actions should be transferred and consolidated, however, Plaintiff believes the most appropriate transferee forum to hear the Actions is the Central District of California.

---

[10]   United    States    District    Courts    —    National    Judicial    Caseload    Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2024.pdf at 68, 72 (last visited Aug. 20, 2024).

Dated: August 20, 2024

Respectfully submitted,

*/s/ Daniel S. Robinson*
Daniel S. Robinson (SBN 244245)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Dr.
Newport Beach, CA 92660
(949) 720-1288;Fax: 949-720-1292
drobinson@robinsonfirm.com
molson@robinsonfirm.com

Abbas Kazerounian (SBN 249203)
Mona Amini (SBN 296829)
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
(800) 400-6808; Fax: (800) 520-5523
ak@kazlg.com
mona@kazlg.com

*Attorneys for Plaintiff,*
*Faisal Moledina*