## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE: SNOWFLAKE, INC.
DATA BREACH LITIGATION

MDL No. 3126

## RESPONSE OF INTERESTED PARTIES, PLAINTIFFS
## JOSHUA BOBBITT AND VANESSA RASON, IN SUPPORT OF
## MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED
## ACTIONS TO THE DISTRICT OF MONTANA PURSUANT TO 28 U.S.C. § 1407

## I.    INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and JPML Rule 6.2(e), Interested Parties Joshua Bobbitt and Vanessa Rason[1] file this response in support of Plaintiff Emmanuel Chaidez's motion (*see* Dkt. No. 1) ("Motion") to transfer the related and tag-along cases in this data breach litigation against Snowflake, Inc. and its customers (e.g., AT&T, Ticketmaster, Advance Auto Parts), and for centralized proceedings before Chief Judge Brian Morris of the District of Montana.

All the requirements of 28 U.S.C. § 1407 are met here. Common issues of fact abound with respect to the related and tag-along actions because all cases relate to a data breach that has at its center Snowflake, Inc. Centralization will create efficiencies and streamline pre-trial proceedings in one location, namely where the "hub" in this "hub-and-spoke" data breach litigation— Snowflake—is located. Snowflake is headquartered in Bozeman, Montana and is the common thread running through all the related actions, irrespective of whether it is named as a defendant in a case. Much of the key evidence that will be common to and overlap in the related actions (including many key witnesses) is likely located in Montana. Further, Montana is a convenient forum for this litigation and given that it is currently managing no MDLs, the District of Montana

---

[1] Joshua Bobbitt and Vanessa Rason are the named plaintiffs in the following related actions: *Bobbitt v. Snowflake, Inc., et al.*, Case No. 2:24-cv-00071-BMM (D. Mont.); *Rason v. Snowflake, Inc., et al.*, Case No. 2:24-cv-00076-BMM (D. Mont.)

possesses and can devote the necessary judicial resources to manage an MDL. For these reasons, those that follow, and the reasons set forth in Plaintiff Chaidez's Motion, transfer and centralization of the related actions pursuant to § 1407 is efficient and appropriate, and the District of Montana and Chief Judge Brian Morris are the optimal transferee venue and judge for this MDL.

## II.    ARGUMENT

### A.    TRANSFER TO SINGLE DISTRICT FOR PRETRIAL PROCEEDINGS UNDER 28 U.S.C. § 1407 IS APPROPRIATE

#### 1.    The Actions Involve Common and Complex Questions of Fact

The first element of the Section 1407 transfer analysis is whether there are one or more common questions of fact. *See* 28 U.S.C. § 1407. The statute, however, does not require a "complete identity or even [a] majority" of common questions of fact to justify transfer. *In re Zyprexa Prod. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004).

The related actions share a common and overlapping core of factual allegations relating to a common breach and concerning common conduct by a common actor—Snowflake. The factual questions common to all actions are numerous and complex, and include (without limitation): whether Snowflake was vulnerable to attack; whether Snowflake and its customers owed duties to class members with respect to safeguarding sensitive information; whether defendants failed to comply with those duties; whether breach victims had their sensitive information compromised in the breach; whether Plaintiffs and class members suffered damages as a result of the Data Breach and, if so, in what amount; and whether Plaintiffs and class members are entitled to injunctive relief.

In addition, the related actions rely upon similar and overlapping legal theories of recovery, each turning on the failure of Snowflake and its customers to prevent or otherwise protect against a data breach. As the Panel has previously stated, "the presence of additional or

differing legal theories is not significant when the actions still arise from a common factual core . . . ." *See In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008). This Panel's recent decision in another high profile "hub-and-spoke" data breach litigation highlights the efficiencies gained by centralization where common factual issues are prevalent. *See In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402, 1405 (J.P.M.L Oct. 4, 2023) (granting motion § 1407 motion, where actions "can be expected to share common and complex factual questions as to how the MOVEit vulnerability occurred, the circumstances of the unauthorized access and data exfiltration, and Progress's response to it, as well as the response of various downstream MOVEit users and customer-facing defendants . . . ."). The pending actions clearly satisfy the first element of the transfer analysis under Section 1407.

> **2.      Section 1407 Transfer and Centralization Will Promote Convenience for the Parties and Witnesses**

Resolution of common issues in a single forum would further the convenience of all parties and witnesses. *See* 28 U.S.C. § 1407(a). Because all actions involve similar allegations and factual questions, the plaintiffs in the actions will require discovery of the same documents and depositions of the same witnesses. Absent centralization and transfer, all parties will be subjected to duplicative discovery and discovery disputes, and witnesses will face multiple, redundant depositions. *See, e.g.*, *In re T-Mobile 2022 Customer Data Sec. Breach Litig.,* 677 F. Supp. 3d 1366, (Mem)–1367 (J.P.M.L. 2023) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary."); *In re Pilot Flying J Fuel Rebate Cont. Litig. (No. II),* 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of [the defendant's] officers and employees and duplicative document discovery regarding the alleged scheme").

3

Absent transfer, the federal court system will be forced to administer—and Snowflake (and any of its customers that are co-defendants) potentially will be compelled to defend and/or participate in party or third-party discovery in—numerous related actions across multiple venues, all proceeding on potentially different pretrial schedules and subject to different judicial decision-making and local procedural requirements. Many of the same pretrial disputes are likely to arise in each action. Likewise, due to the similar claims in the various cases, the defenses asserted in the actions will be substantially similar, as will the substance of any motions to dismiss and motions for summary judgment, which will be based on the same claims and arguments.

None of the pending cases has progressed to the point where efficiencies will be forfeited through transfer to an MDL proceeding—each action is in its infancy. This Panel has routinely recognized that consolidating litigation in one court benefits *both* plaintiffs and defendants. *See, e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001) ("And it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned."); *In re Baldwin-United Corp. Litig.,* 581 F. Supp. 739, 741 (J.P.M.L. 1984) (same). As for the defendants, expert depositions will be coordinated, document production will be centralized, and travel for current and former employees will be minimized, since they will only have to appear in one location.

While it is anticipated that there will be additional case filings, the current level of litigation would benefit from transfer and coordinated proceedings, given the allegations of these complaints. *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1324 (J.P.M.L. 2017) (finding that "centralization under Section 1407 . . . will serve the convenience

of the parties and witnesses and promote the just and efficient conduct of this litigation."); *see also In re First Nat'l Collection Bureau, Inc., Telephone Consumer Protection Act (TCPA) Litig.*, 11 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014) ("[E]fficiencies can be gained from having these actions proceed in a single district," such as "eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings . . . and conserv[ing] the resources of the parties, their counsel and the judiciary."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("Centralization will . . . conserve the resources of the parties, their counsel, and the judiciary.").

In sum, transfer of these actions would serve the convenience of the parties and eliminate duplicative discovery, saving the parties and the courts significant time, effort, and money.

### 3.    Transfer and Centralization Will Promote the Just and Efficient Conduct of These Actions

Centralization is necessary to prevent inconsistent pretrial rulings on many central issues, which would present significant problems due to the substantial consistency in factual and legal allegations among all Actions. *Id.* (Observing that centralization would "prevent inconsistent pretrial rulings on class certification and other issues"). A single MDL judge coordinating pretrial discovery and ruling on pretrial motions in all these cases at once will help reduce witness inconvenience, the cumulative burden on the courts, and the litigation's overall expense, as well as minimizing this potential for conflicting rulings. *Id.*

Centralization will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts. *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) ("[A] single MDL encompassing [multiple defendants] . . . is necessary to ensure the just and efficient conduct of this litigation."). This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the

benefit of litigants, third parties, and the courts. *See id.* at 1354 ("centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation."); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015) ("Centralization will . . . conserve the resources of the parties, their counsel and the judiciary."). Transfer to a single district court is appropriate for the just and efficient resolution of these cases.

**B.    THE DISTRICT OF MONTANA AND CHIEF JUDGE BRIAN MORRIS ARE THE MOST APPROPRIATE TRANSFEREE FORUM AND TRANSFEREE JUDGE**

Interested Parties Joshua Bobbitt and Vanessa Rason submit that the District of Montana is the superior forum for the centralized proceedings, and that Chief Judge Brian Morris is well-equipped to preside over an MDL.

In choosing an appropriate transferee forum, this Panel considers: (1) where the largest number of cases is pending; (2) where discovery has occurred; (3) where cases have progressed furthest; (4) the site of the occurrence of the common facts; (5) where the cost and inconvenience will be minimized; and (6) the experience, skill, and caseloads of available judges. MANUAL FOR COMPLEX LITIGATION, § 20.132 (4th ed. 2004). While several of these criteria are not yet implicated due to the infancy of the actions, the District of Montana presents the most appropriate forum for the transfer and centralization of these actions.

The first factor favors the District of Montana because the largest number of cases related to the Snowflake data breach are pending in that District. At least 20 pending actions have been filed there, and that number will continue to grow.

The second and third factors are irrelevant here because discovery has not yet occurred in any case, and no defendants have answered or otherwise responded to the complaint in any action.

The fourth and fifth factors heavily favor the District of Montana because Snowflake is headquartered in the District of Montana. The most important witnesses and evidence likely will be located at Snowflake's headquarters or elsewhere in Montana. Snowflake is the primary and common actor—and is a named defendant in many cases—in this matter and it was Snowflake's products and services that are at the heart of the data breach in this case. Snowflake's computers, servers, and systems, including those relating to its cloud storage products and services at the heart of the breach, presumably are located in Montana. Snowflake's data security and information technology personnel, and many individuals with knowledge about Snowflake's products and services, are based at the company's headquarters or in nearby surrounding areas.

Large data breaches where numerous actions are filed in multiple districts are transferred and centralized under Section 1407 basically as a matter of course. And in the vast majority of prior data breach MDLs, the Panel transferred the cases to the district where the defendant is headquartered because the relevant documents, witnesses, and/or breached servers were likely to be located there. *See, e.g., In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402, 1407 (J.P.M.L Oct. 4, 2023) (granting motion to transfer and centralize in hub-and-spoke data breach and transferring to D. Mass. because the principal actor and defendant, and "the owner of the MOVEit file transfer software, Progress Software Corp., is headquartered in Burlington, Massachusetts. Relevant employees likely are based in this district, where potentially relevant databases, documents, witnesses, and other evidence also may be found."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d at 1374–75 (transferring to D. Md. because, e.g., "Marriott is headquartered in that district, and relevant documents and witnesses thus likely will be found there."); *In re Capital One Customer Data Sec. Breach Litig.*, 396 F. Supp. 3d 1364, 1365 (J.P.M.L. 2019) (transferring to E.D. Va. because, e.g., "Capital One is

headquartered within this district . . . and . . . relevant documents and witnesses will be found there."). This litigation has a strong nexus to Montana, further supporting transfer to the District of Montana. *See, e.g., In re Apple Inc. Device Performance Litig.*, 291 F. Supp. 3d 1371, 1372 (J.P.M.L. 2018) (transferring and centralizing proceedings in Northern District of California because "[t]his district *has a strong connection* to these cases." (emphasis added)).

Furthermore, the District of Montana is a convenient location for MDL proceedings. Montana is a growing hub for international business[2] and is readily accessible by air travel. Proposed transferee judge Chief Judge Morris sits in the Great Falls division of the District of Montana, and that courthouse is serviced by three international airports: Great Falls International Airport (10 minute drive from the courthouse, with direct flight options to and from Denver, Las Vegas, Minneapolis, Phoenix, Salt Lake City, and Seattle); Bozeman Yellowstone International Airport (year round direct flight options to and from Atlanta, Chicago, Dallas, Denver, Los Angeles, San Francisco, among others), and Billings-Logan International Airport (year round direct flight options to and from numerous major cities). In any event, many MDLs efficiently operate without the need for regular in-person court appearances and the transferee court can utilize video conferencing technology which is ubiquitous in the post-pandemic legal profession.

Finally, the sixth factor favors transfer to Chief Judge Morris and the District of Montana. The relative conditions of the dockets of the possible transferee courts are an important consideration. Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3864 (4th ed.). During the 12-month

---

[2] Nick Holom, *Montana's Got the Goods: Montana's International Trade in Goods Sectors,* Montana Economy at a Glance (April 2022) https://lmi.mt.gov/_docs/0422-ImportExport.pdf; *Montana: Facts and Figures,* U.S. Global Leadership Coalition, https://www.usglc.org/state-facts/montana/#:~:text=Montana%20exported%20%242.0%20billion%20in,pandemic%20on%20the%20global%20economy.&text=Agricultural%20exports%20are%20important%20to,2022%2C%20according%20to%20the%20USDA (last visited Aug. 20, 2024).

period ending March 31, 2024, only 576 civil actions were pending in the District of Montana, meaning the three active district judges had only a 192 civil case load.[3] And as of last month, there are no MDLs pending in the District of Montana. The District of Montana can dedicate resources to an MDL of this magnitude, whereas other potential transferee districts have resources tied up overseeing numerous MDLs, e.g., the Central District of California, where Ticketmaster and Live Nation are located (18 pending MDLs), the Northern District of Texas, where AT&T is located (3 pending MDLs).[4]

Finally, Chief Judge Morris is eminently qualified and appears to be available to oversee this MDL. Chief Judge Morris is a Stanford University undergraduate and law school graduate who clerked for Justice William Rehnquist from 1993-1994 and eventually served as a Montana Supreme Court Justice from 2005-2013.[5] Chief Judge Morris is a sophisticated jurist who has presided over numerous high-profile cases in Montana.[6]

On July 31, 2024, Chief Judge Morris ordered that all cases in which Snowflake was a defendant in the District of Montana be reassigned to him and directed the clerk to assign any future cases filed against Snowflake with similar allegations to him. *See, e.g.*, Dkt. No. 10 in Case

---

[3] *Table C-1–U.S. District Courts–Civil Federal Judicial Caseload Statistics,* United States Courts (Mar. 31, 2024), https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2024/03/31.

[4] *MDL Statistics Report - Distribution of Pending MDL Dockets by District*, United States Judicial Panel on Multidistrict Litigation (Aug. 1, 2014), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-1-2024.pdf.

[5] *Chief Justice Brian Morris*, United States District Court District of Montana, https://www.mtd.uscourts.gov/chief-judge-brian-morris-chambers (last visited Aug. 20, 2024).

[6] *E.g.,* Niina H. Farrah, *Meet the judge at the heart of the West's top energy battles,* E&E News (May 29, 2020, 07:26 a.m. EDT), https://www.eenews.net/articles/meet-the-judge-at-the-heart-of-the-wests-top-energy-battles/; Blair Miller, *Judge hears arguments on federal challenge to new voter registration requirements*, Daily Montanan (Mar. 20, 2024, 5:50 p.m.), https://dailymontanan.com/2024/03/20/judge-hears-arguments-on-federal-challenge-to-new-voter-registration-requirements/.

No. 2:24-cv-00055-BMM. The reassigned cases included the case filed on behalf of responding Plaintiff Bobbitt. *See Bobbitt v. Snowflake, et al.*, Case No. 2:24-cv-00071-BMM (D. Mont.), Dkt. No. 3 (reassigning case to Chief Judge Morris); *see also Rason v. Snowflake, et al.*, Case No. 2:24-cv-00076-BMM (D. Mont.) (originally assigned to Chief Judge Morris). Chief Judge Morris's request for assignment of cases relating to the Snowflake data breach signals his availability for this matter, and that combined with his experience as District Judge since 2013 (and Chief Judge of the Court since 2020) and the favorable docket conditions in the District of Montana, demonstrates that Chief Judge Morris and the District of Montana are the most suitable landing place for centralized pre-trial proceedings.

## III.   CONCLUSION

For the reasons stated above, and for all the reasons set forth in Plaintiff Chaidez's initial Motion, Interested Parties Joshua Bobbitt and Vanessa Rason encourage the Panel to centralize the actions in the District of Montana before Chief Judge Brian Morris.


Dated:  August 21, 2024                                      Respectfully submitted,

                                                            */s/ Andrew W. Ferich*
                                                            Andrew W. Ferich
                                                            **AHDOOT & WOLFSON, PC**
                                                            201 King of Prussia Road, Suite 650
                                                            Radnor, PA 19087
                                                            Telephone:  310.474.9111
                                                            Facsimile:   310.474.8585
                                                            *aferich@ahdootwolfson.com*

                                                            John Heenan
                                                            **HEENAN & COOK**
                                                            1631 Zimmerman Trail
                                                            Billings, MT 59102
                                                            Phone: (406) 839-9091
                                                            *john@lawmontana.com*