BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE SNOWFLAKE, INC. DATA SECURITY BREACH LITIGATION** | MDL No. 3126 |

### OPPOSITION TO PLAINTIFF'S MOTION FOR TRANSFER BY DEFENDANTS ADVANCE AUTO PARTS, INC. AND ADVANCE STORES COMPANY, INCORPORATED

Plaintiff's motion ignores just about everything that has happened since these actions were filed. Because many of the actions have already been consolidated, there is simply no need for the unwieldy MDL that plaintiff proposes. Meanwhile, plaintiff treats all the defendants as undifferentiated monoliths—"spokes," to use his term—disregarding the critical differences among the defendants and the individual causes of action they face. Plaintiff has not come close to satisfying the standard under 28 U.S.C. § 1407(a).

### PROCEDURAL HISTORY

On July 26, plaintiff moved to consolidate 48 actions and transfer them to the District of Montana for coordinated pretrial proceedings. Pl. Mot. (Dkt. 1-1). All of these actions arise from an April 2024 data breach of the systems of Snowflake, Inc., which is named as a defendant in some of the actions. The plaintiffs in these actions have also sued defendants that used Snowflake's cloud storage platform and were allegedly impacted by the data breach. In thirteen of the actions, the plaintiffs (including Emmanuel Chaidez, who brought the motion to transfer) have sued defendants Advance Auto Parts, Inc. and Advance Stores Company, Incorporated (the "Advance defendants"). *See* Pl. Schedule of Actions.

Plaintiff's motion omits a critical point: the cases against the Advance defendants that plaintiff identified have been consolidated before a single judge in the Eastern District of North

Carolina, the Honorable Richard E. Myers, II. Six cases had been consolidated before plaintiff filed his motion, and four more were consolidated soon after. To our knowledge, three more cases have been filed against the Advance defendants since plaintiff filed his motion, and Snowflake is named as a co-defendant in two of them. The table below shows the status of each case involving the Advance defendants:

| Case | Date Filed | Status |
|---|---|---|
| *Charles McGee v. Advance Auto Parts, Inc.*, No. 5:24-CV-00352 (E.D.N.C.) | June 24, 2024 | Renamed *In re Advance Stores Company, Incorporated, Data Breach Litigation* (*"Advance Stores"*). |
| *Emmanuel Chaidez v. Advance Auto Parts, Inc.*, No. 5:24-CV-00354 (E.D.N.C.) | June 24, 2024 | Consolidated on July 24, 2024 with *Advance Stores*. See *Chaidez*, No. 5:24-CV-00354, Dkt. 6. |
| *Don Smith v. Advance Auto Parts, Inc.*, No. 5:24-CV-00356 (E.D.N.C.) | June 24, 2024 | Consolidated on July 24, 2024 with *Advance Stores*. See *Smith*, No. 5:24-CV-00356, Dkt. 6. |
| *Dylan Joseph Dragone v. Advance Auto Parts, Inc.*, No. 5:24-CV-00357 (E.D.N.C.) | June 24, 2024 | Consolidated on July 24, 2024 with *Advance Stores*. See *Dragone*, No. 5:24-CV-00357, Dkt. 5. |
| *Gregory Vogel v. Advance Auto Parts, Inc.*, No. 5:24-CV-00361 (E.D.N.C.) | June 26, 2024 | Consolidated on July 24, 2024 with *Advance Stores*. See *Vogel*, No. 5:24-CV-00361, Dkt. 19. |
| *Gary Carr v. Advance Auto Parts, Inc.*, No. 1:24-CV-05475 (N.D. Ill.) | June 28, 2024 | Transferred on July 25, 2024 to the Eastern District of North Carolina. See *Carr*, No. 1:24-CV-05475, Dkt. 8.<br><br>Consolidated on August 14, 2024 with *Advance Stores*. See *Advance Stores*, No. 5:24-CV-00352, Dkt. 22. |
| *Brian Riley v. Advance Auto Parts, Inc.*, No. 5:24-CV-00397 (E.D.N.C.) | July 10, 2024 | Consolidated on July 24, 2024 with *Advance Stores*. See *Riley*, No. 5:24-CV-00397, Dkt. 10. |
| *Adam Levy v. Advance Auto Parts, Inc.*, No. 5:24-CV-00404 (E.D.N.C.) | July 12, 2024 | Consolidated on August 1, 2024 with *Advance Stores*. See *Advance Stores*, No. 5:24-CV-00352, Dkt. 20. |

| *Caleb Aaron Cook v. Advance Stores Company, Inc*orporated, No. 5:24-CV-00426 (E.D.N.C.) | July 24, 2024 | Consolidated on August 1, 2024 with *Advance Stores*. *See Advance Stores*, No. 5:24-CV-00352, Dkt. 20. |
|---|---|---|
| *Clark v. Advance Auto Parts, Inc.*, No. 5:24-CV-00429 (E.D.N.C.) | July 25, 2024 | Consolidated on August 14, 2024 with *Advance Stores*. *See Advance Stores*, No. 5:24-CV-00352, Dkt. 22. |
| *Bobbitt v. Snowflake Inc. & Advance Stores Company, Incorporated*, No. 2:24-cv-71 (D. Mont.) | July 30, 2024 | Plaintiff filed a notice of related case in this action. *See* Dkt. 21. The responsive pleading deadline for Advance Stores, Company, Incorporated has not yet arrived. |
| *Arkett v. Advance Auto Parts, Inc.*, No. 2:24-cv-01122 (W.D. Pa.) | August 6, 2024 | The Western District of Pennsylvania issued an order transferring this case to the Eastern District of North Carolina for consolidation into *Advance Stores* on August 21, 2024. Dkt. 6. |
| *Townsend v. Snowflake Inc. & Advance Stores Company, Incorporated*, No. 2:24-cv-00077 (D. Mont.) | August 7, 2024 | The Advance defendants have not yet been served. |

## ARGUMENT

Under Section 1407, a party seeking to create an MDL must show that each of the following criteria is satisfied: (i) the actions must share "one or more common questions of fact"; (ii) the transfer must be "for the convenience of the parties and witnesses"; and (iii) the transfer must "promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a); *see also In re Highway Accident Near Rockville, Conn.*, 388 F. Supp. 574, 575 (J.P.M.L. 1975) ("[T]he Panel must be satisfied that all of the statutory criteria have been met.").

Plaintiff's motion should be denied for two reasons. *First*, a transfer would be neither convenient nor efficient because a superior alternative already has been implemented in the cases brought against the Advance defendants. *Second*, the Advance defendants' cases are significantly different, both factually and legally, from the others addressed in plaintiff's motion.

A.  **An MDL Would Be Inconvenient and Inefficient Because The Cases Against The Advance Defendants Have Already Been Consolidated Before A Single Judge.**

This Panel has repeatedly explained that "voluntary coordination among the parties and the involved courts . . . [is] a preferable alternative to centralization." *In re Intuitive Surgical, Inc. Da Vinci Robotic Surgical Sys. Prod. Liab. Litig.*, 883 F. Supp. 2d 1339, 1340 (J.P.M.L 2012); *see also In re Ne. Contaminated Beef Prods. Liab. Litig.*, 856 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012) (same). As explained in the Multidistrict Litigation Manual: "If conventional case handling practices in the districts in which the actions are filed would be adequate for management of the litigation, it may be said that an alternative to transfer exists." *Multidistrict Litigation Manual*, § 5.33 (2015).

That is just what happened in the cases. The parties in those cases (including Emmanuel Chaidez) began coordinating within a matter of days of the actions being filed, and have been consolidating all of the cases into a single proceeding in the Eastern District of North Carolina. The result is that these actions already have found a home where they can proceed in a manner that is efficient and fair to all parties. In fact, Judge Myers recognized that because *those* actions were "brought against the same defendants, rely on the same witnesses, allege the same misconduct, and would be answered with the same defenses," consolidation would promote "judicial convenience and economy" and "avoid unnecessary costs to the parties." *Advance Stores*, No. 5:24-CV-00352, Dkt. 13 at 1-2 (quotation marks and alterations omitted). If the *Advance Stores* action were mixed with other suits against unrelated defendants, those efficiencies would be undone.

In short, because the parties have "every ability to cooperate"—and have already cooperated—to "minimize the possibilities of duplicative discovery and/or inconsistent pretrial

4

rulings," centralization is not necessary. *In re Gen. Mills, Inc. Yoplus Yogurt Prods. Mktg. & Sales Practices Litig.*, 716 F. Supp. 2d 1371, 1372 (J.P.M.L. 2010).

> **B.    An MDL Would Be Improper Because The Cases Against The Advance Defendants Are Significantly Different From The Others.**

This Panel has denied centralization when, despite the existence of one or more common questions, "any factual overlap among the actions . . . may be eclipsed by factual issues specific to each [] defendant." *In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1374 (J.P.M.L. 2021); *see also In re: Prescription Drug Co-Pay Subsidy Antitrust Litig.*, 883 F. Supp. 2d 1334, 1335 (J.P.M.L. 2012) (denying centralization because "[i]ndividualized discovery and legal issues are likely to be numerous and substantial"); *In re: Honey Prod. Mktg. & Sales Pracs. Litig.*, 883 F. Supp. 2d 1333 (J.P.M.L. 2012) ("Although the actions share some common factual questions . . . these questions do not appear sufficiently complex or numerous to justify Section 1407 transfer at this time.").

As far as we know, no discovery has taken place in the actions that are the subject of plaintiff's motion. But even from the face of the complaints, it is clear that there will be important distinctions in the claims and defenses among the various defendants. The complaints make the following allegations about Snowflake and the data breaches:

- A threat actor obtained stolen Snowflake credentials for many of its customers, including AT&T, Ticketmaster, Neiman Marcus, and Santander Bank. *See, e.g., Richard Olivieri v. AT&T, Inc.*, No. 2:24-CV-00056 (D. Mont.), Dkt. 1 ¶¶ 10-12.

- Many of the compromised account credentials had been acquired by the threat actor as early as 2020, four years before the data breach. *See, e.g., Lewis v. Snowflake, Inc.*, No. 2:24-CV-00064 (D. Mont.), Dkt. 1 ¶ 4.

- Snowflake did not require its customers to implement multi-factor authentication (MFA), and the absence of MFA caused their Snowflake environments to be breached. *See, e.g., Olivieri*, No. 2:24-CV-00046, Dkt. 1 ¶ 12; *Leal v. Ticketmaster, LLC*, No. 2:24-CV-00046 (D. Mont.), Dkt. 1 ¶ 17.

- Administrators at individual Snowflake clients could not enforce MFA; the decision of whether to use MFA to access Snowflake was made by individual users, resulting in "weak links" of users who did not have MFA enabled. *See, e.g.*, *Leal*, No. 2:24-CV-00046, Dkt. 1 ¶¶ 15, 17; *Advance Stores*, No. 5:24-CV-00352, Dkt. 1 ¶ 5 (alleging that the Advance defendants stored data on a database that was "negligently and/or recklessly configured," such that it "allowed files on the database to be accessed without . . . any form of multifactor authentication").

These allegations reveal three important points. *First*, according to plaintiffs, the threat actors stole credentials from each affected client *before* accessing the client's individual Snowflake environment—often years before. And there will be unique facts surrounding each client's protection of its credentials, including whether the client hired third-party contractors to work with its Snowflake environment and the precautions taken with contractors. In other words, plaintiffs will not be able to prove their cases simply by honing on the April 2024 breach; the individual facts leading up to the breach will be essential. That makes these cases different from those cited by the plaintiff, where a threat actor allegedly breached the service provider's systems directly, without the intermediate step of stealing client credentials. *See In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402, 1405 (J.P.M.L. 2023); *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372, 1372 (J.P.M.L. 2023).

*Second*, there will be variations across each client's state of mind. Different clients undoubtedly had different knowledge about Snowflake's alleged vulnerability, and that knowledge may well have changed with time. For similar reasons, there will be differences in each client's knowledge of whether their individual *users* had implemented MFA, particularly because (as the complaints allege) the clients' administrators were unable to enforce MFA on their own. *Id*.

*Third*, each client's response to the unauthorized access to its Snowflake environment will be unique. There will be variations in terms of how long it took the client to respond, how it contained the threat (and how swift and successful its attempts were), and the manner in which

the client notified customers and/or employees. *See, e.g.*, *Accellion*, 543 F. Supp. 3d at 1374 (MDL inappropriate because there were too many "unique factual issues," including "when each client was made aware of a data breach and when it notified its customers and/or employees.").

These individualized issues will "eclipse[]" any common ones. *Id.* And that is easy to tell from plaintiff's own motion, which describes the "common questions of fact" in terms so general that they are meaningless. These questions include "whether Snowflake or the Snowflake Spoke Defendants violated state common laws by failing to properly secure the [data] of various plaintiffs"; "whether Snowflake and/or the Snowflake Spoke Defendants' conduct caused injury to plaintiffs"; and "the measure and amount of damages sustained by plaintiffs." Pl. Mot. at 5-6. That is no different from saying that all of the cases will include the "common questions" of "whether the defendants are liable" and "what relief is appropriate"—like every case ever filed.

## CONCLUSION

The Panel should deny plaintiff's motion.

Dated:  August 21, 2024                        Respectfully submitted,

**ADVANCE AUTO PARTS, INC. and ADVANCE STORES COMPANY, INCORPORATED**

By: /s/ *Joshua L. Becker*
Joshua L. Becker
Georgia Bar No. 046046
**SHOOK, HARDY & BACON L.L.P.**
1230 Peachtree Street, NE, Suite 1200
Atlanta, GA 30309
Telephone: (470) 867-6000
Facsimile: (470) 867-6001
jbecker@shb.com

7