**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SNOWFLAKE, INC., DATA SECURITY BREACH LITIGATION | MDL No. 3126 |

**PLAINTIFFS JAMILA ARMSTRONG'S, MATTHEW MILLER'S, JESSICA MILLER'S, AND JEREMIAH TOWNSEND'S RESPONSE IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS TO THE DISTRICT OF MONTANA PURSUANT TO 28 U.S.C. § 1407**

Plaintiffs Jamilia Armstrong, Matthew Miller, Jessica Miller, and Jeremiah Townsend ("Plaintiffs"), plaintiffs in the actions *Armstrong v. Snowflake, Inc.*, Case No. 2:24-cv-00058 (D. Mont.); *Miller v. Ticketmaster, LLC et al.*, Case No. 2:24-cv-05867 (C.D. Cal.); *Miller v. Snowflake, Inc., et al.*, Case No. 2:24-cv-00067 (D. Mont.); and *Townsend v. Snowflake, Inc. et al.*, Case No. 2:24-cv-00077 (D. Mont.), respectfully submit the following response in support of Movant Emmanuel Chaidez's motion for transfer and centralization of the actions listed in the Schedule of Actions (ECF No. 3) and any subsequently filed tag-along actions (collectively, the "Related Actions") to the District of Montana for coordinated or consolidated pretrial proceedings.

**INTRODUCTION**

There are currently sixty-three (63) Related Actions pending across eleven (11) different federal district courts, all alleging similar wrongful conduct against a combination of Defendants Snowflake, Inc. ("Snowflake"); Ticketmaster, LLC; Live Nation Entertainment, Inc.; AT&T, Inc.; Advance Stores Company, Inc.; and others (collectively, "Defendants"). The Related Actions each involve common questions of law and fact as they arise from a "hub-and-spoke" type data breach of Snowflake's data cloud platform, during which cybercriminals were able access approximately one-hundred sixty-five (165) Snowflake customer accounts (including those companies identified above) and exfiltrate large amounts of personally identifiable information ("PII") stored therein.

Given the number of Related Actions (63) and federal districts involved (11), informal coordination is not a viable alternative. Thus, centralization and transfer for coordinated or consolidated pretrial proceedings to the District of Montana—the location of Snowflake's headquarters—would be the most convenient forum for the parties and witnesses and would promote efficient adjudication of the litigation for many of the reasons the Panel identified in *In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402, 1405 (J.P.M.L. 2023) and *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. MDL 3090, 2024 WL 436478 (J.P.M.L. Feb. 5, 2024).

## BACKGROUND

Snowflake is a cloud company that provides cloud-based data storage and analytics services, generally termed "data-as-a-service" to numerous corporate customers, including various defendants named in the Related Actions. In the course of providing its data cloud platform services to its various corporate customers, Snowflake is entrusted with individuals' highly sensitive PII.  On roughly May 23, 2024, Snowflake discovered that unauthorized third parties had gained access to certain of its customers' data cloud accounts. By accessing these accounts, cybercriminals were able to steal, and advertise for sale, data from a significant volume of Snowflake's corporate customers (the "Data Breach"). A critical factor leading to the Data Breach was Snowflake's data security policy on multifactor authentication ("MFA"). At the time of the Data Breach, Snowflake did not automatically enroll its customers in or require them to set up MFA to access their Snowflake accounts. To date, the Data Breach has compromised the PII of millions of individuals and the extent of the impact is subject to change as more and more companies begin notifying individuals affected by the Data Breach.

In the wake of this massive Data Breach, consumers have filed sixty-three (63) overlapping putative class actions across eleven (11) different federal district courts against Snowflake and its corporate customers. Plaintiffs in each of the Related Actions assert that Defendants have a duty to secure, maintain, protect, and safeguard the PII with which they were entrusted; that the risk of a cyberattack was highly foreseeable; that Defendants nonetheless failed to properly protect Plaintiffs' and putative class members' PII, which resulted in the Data Breach; and that Plaintiffs and putative class members experienced harm as a result of the Data Breach. As such, each Related Action arises from the same nucleus of operative facts and alleges a common set of facts regarding Defendants' failure to properly protect and secure the PII with which they were entrusted.

Though the effects of the Data Breach were felt and continue to echo across the United States, Plaintiff contends that the most logical and convenient location for these proceedings is the District of Montana, where Snowflake maintains its headquarters and where twenty (20) of the sixty-three (63) Related Actions are currently pending. Additionally, as discussed in more detail below, transfer and consolidation of the Related Actions to the District of Montana will promote the just and efficient conduct of the litigation.

## ARGUMENT

### I.     TRANSFER IS APPROPRIATE PURSUANT TO 28 U.S.C. § 1407(A).

Centralization and transfer are permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Man. for Complex Litig., §

20.131 (4th ed. 2004). Transfer and centralization for coordinated or consolidated pretrial proceedings would achieve each of those objectives.

A.     The Litigation Involves Common Questions of Fact.

"Transfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant when the actions still arise from a common factual core." *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012).

Here, the Related Actions all arise out of the same factual core—the Data Breach and subsequent harm that occurred—impacting millions of individuals. The Panel has previously centralized actions arising out of a single data breach. *See, e.g.*, *In re Change Healthcare, Inc., Customer Data Sec. Breach Litig.*, No. MDL 3108, 2024 WL 2884723 (J.P.M.L. June 7, 2024); *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368 (J.P.M.L. 2023); *In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373 (J.P.M.L. 2021); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350 (J.P.M.L. 2019); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372 (J.P.M.L. 2019); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351 (J.P.M.L. 2018); *In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378 (J.P.M.L. 2015); and *In re: Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013).

The Panel has also previously centralized actions arising out of hub-and-spoke data breaches, such as the one at issue here. *See, e.g.*, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2024 WL 436478, at *1 (centralizing actions against providers and users of a file transfer software); *In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d. at 1405

(J.P.M.L. 2023) (same); *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372 (J.P.M.L. 2023) (centralizing actions against technology services vendor and one of its customers).

As with those prior data breaches, the Data Breach here has spawned similar litigation bound to a single event—the compromise of Snowflake's data cloud platform. Each of the Related Actions therefore raises common questions including, *inter alia*: (1) whether Defendants owed a duty to Plaintiffs and putative class members to protect their PII; (2) whether Defendants had a duty to implement adequate security measures to protect their computer systems from unauthorized access and related disruptions; (3) whether Defendants were negligent in collecting and storing Plaintiffs' and putative class members' PII; (4) whether Plaintiffs and putative class members are entitled to damages and/or restitution as a result of Defendants' wrongful conduct; and (5) whether Plaintiffs and putative class members are entitled to declaratory judgment. All Related Actions further hinge upon similar legal theories of recovery, with Defendants' alleged duty to implement adequate data security measures to prevent or mitigate the Data Breach—and their alleged failure to fulfill those duties—at the center of the litigation.

Given the similar claims raised in each Related Action, and that Snowflake's data cloud platform lies at the heart of all the Related Actions, adjudicating these and other common issues in a single transferee court will benefit the parties and witnesses while promoting judicial efficiency, as a single court can easily coordinate the pretrial proceedings governing the claims along with these common issues. *See In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d at 1405–06 (recognizing that the MOVEIt vulnerability was the "core of all cases" and centralizing cases even though no single defendant was named in all cases); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2024 WL 436478, at *2. ("[T]his litigation—regardless

of whether Fortra is named as a defendant in a particular case—poses significant questions about Fortra's role in the ultimate exploitation of the GoAnywhere vulnerability.").

> **B.      Transfer for Coordinated or Consolidated Pretrial Proceedings Would Serve the Convenience of the Parties and the Court, Promote Judicial Efficiency, and Avoid Duplication of Resources.**

Centralization and coordination will further the convenience of the parties and the just and efficient conduct of the Related Actions because it will eliminate repetitive discovery and any possibility of conflicting rulings. *See, e.g.*, *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d at 1373 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification and *Daubert* motions; and conserve the resources of the parties, their counsel, and the judiciary."); *In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d at 1405  ("[W]e find that centralization of these actions in the District of Massachusetts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions can be expected to share factual questions arising from allegations that a vulnerability in Progress Software Company's MOVEit Transfer and MOVEit Cloud file transfer services was exploited by a Russian cybergang in May 2023, which to date is estimated to have compromised the personally identifying information (PII) of over 55 million people."). And to the extent that discovery in different groups of cases against different defendants does not overlap, "[t]he transferee court may employ any number of pretrial techniques—such as establishing separate discovery and motion tracks—to manage this litigation efficiently." *In re: Home Depot, Inc. Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398, 1400 (J.P.M.L. 2014).

Further, centralization will avoid inconsistent rulings as the Related Actions involve similar facts and claims, and the Related Actions are proposed class actions that overlap. *See In re Seresto Flea & Tick Collar Mktg., Sales Pracs. & Prod. Liab. Litig.*, MDL No. 3009, 2021 WL

3854901, at *1 (J.P.M.L. Aug. 11, 2021) (consolidating actions arising out of violations of state statutory and common law where several of the asserted nationwide and state classes overlapped); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522, 2014 WL 1338473 (J.P.M.L. Apr. 2, 2014) (consolidating actions arising out of a data security breach on behalf of state and/or nationwide classes that asserted either a combination of state and/or federal claims). As a result, without transfer and centralization there is a high likelihood of numerous potentially overlapping classes, raising the risk of inconsistent rulings and inefficiency.

Finally, the procedural posture of each of the Related Actions supports consolidation. Here, each of the Related Actions is still in its infancy, as all have been filed within two months of the Data Breach. *See In re Neo Wireless, LLC, Pat. Litig.*, 610 F. Supp. 3d 1383, 1385 (J.P.M.L. 2022) ("[T]he common early procedural posture among the actions will facilitate their efficient coordination."). Now is the perfect time for transfer, as the transferee court will not be forced to duplicate efforts undertaken by other courts or reconcile prior court rulings. Thus, because the Related Actions are still in the early stages of litigation, bring forth common questions and issues, and because transfer would convenience the parties and further the just and efficient conduct of all Related Actions, the requirements of § 1407(a) are satisfied.

## II.     THE DISTRICT OF MONTANA IS THE MOST APPROPRIATE TRANSFEREE VENUE.

Plaintiffs respectfully submit that the District of Montana is the most appropriate transferee venue. The District of Montana is the district court with the strongest nexus to the litigation and is an efficient and capable choice to manage it. The most central defendant—Snowflake—is headquartered in Bozeman, Montana. The District of Montana is also where a substantial number of the Related Actions have been filed (20 of 63); the court has a relatively light docket compared

to the national average; and the court is easily accessible through a major international airport and other transportation methods.

**A.      The District of Montana Has the Strongest Nexus to the Litigation.**

The Panel often selects the district court with the strongest nexus to the litigation as the transferee district. *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d at 1364 (centralizing data breach cases in district where multiple actions were pending, where defendant was headquartered, and where common witnesses and other evidence would likely be located). Where a common and central defendant to the actions is headquartered is often an important factor in determining the most suitable transfer venue. *See In re GAF Elk Cross Timbers Decking Mktg., Sales Practices & Prods. Liab. Litig.*, 65 F. Supp. 3d 1407, 1408 (J.P.M.L. 2014) (transferring cases to the district in which the common defendant was headquartered).

Here, Snowflake is headquartered in Bozeman, Montana, located within the District of Montana. As Snowflake is the central and most common defendant, it is reasonable to expect that many witnesses with knowledge of the Data Breach, and documents relevant to the litigation, will be located in Bozeman, making the District of Montana the court with the strongest nexus to the litigation. *See In re Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d at 1354 (concluding that the D.N.J. was the appropriate transfer district in part because at least two of the defendants in a data breach action were headquartered in New Jersey.); *In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d. at 1407 (concluding D. Mass. was the most appropriate district because the central defendant was headquartered there and relevant information was likely to be found there).

**B.      The District of Montana Has Favorable Docket Conditions.**

The Panel has also previously chosen transferee districts that have favorable docket conditions. *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F.

Supp. 2d 1358, 1360 (J.P.M.L. 2011) (transferring to a district with "favorable docket conditions");

*In re Lending Tree, LLC, Customer Data Security Breach Litig.*, 581 F. Supp. 2d 1367, 1368

(J.P.M.L. 2008) (transferring to a district that "has the capacity to handle this docket and, in the

past, has been underutilized as a transferee district.").

Currently, the District of Montana has more favorable docket conditions as compared to

the national average. The District of Montana has three judgeships with 402 filings per judgeship,

while the national average is 632 filings per judgeship.[1] Further, the District of Montana currently

has no MDLs pending before it, meaning that the court has resources available to allocate to this

litigation, whereas, in other districts with heavier docket loads, resources would be far more

scarce.[2] As such, transferring the Related Actions to the District of Montana is unlikely to impose

a great burden on the judges of the District.

C.      **The District of Montana Is Conveniently Located and Readily Accessible.**

Finally, this Panel considers whether a proposed transferee forum "will best serve the

convenience of the parties and witnesses and promote the just and efficient conduct of the actions."

*In re Anthracite Coal Antitrust Litig.*, 436 F. Supp. 402, 403 (J.P.M.L. 1977). Here, the District of

Montana is readily accessible. For those within driving distance, it is accessible by several major

highways, including Interstate 90 and Interstate 94. And for parties not within driving distance,

the Billings-Logan International Airport is located only approximately two miles from the James

---

[1] Weighted and Unweighted Filings per Authorized Judgeship (Table X-1A), *Statistical Tables for the Federal Judiciary*, U.S. Courts (Mar. 31, 2024), https://www.uscourts.gov/statistics/table/x-1a/federal-judicial-caseload-statistics/2024/03/31.
[2] *MDL Statistics Report-Distribution of Pending MDL Dockets by District*, JUD. PANEL ON MULTIDISTRICT LITIGATION (Aug. 1, 2024), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-August-1-2024.pdf.

F. Battin Federal Courthouse.[3] The Billings-Logan Airport is serviced by six passenger airlines with direct flights to major hub airports, including those in Phoenix, Arizona; Chicago, Illinois; and Dallas, Texas.[4] Thus, access to the James F. Battin Federal Courthouse will not present a challenge for the parties. For these reasons, Plaintiffs submit the District of Montana is the most appropriate transferee court for coordinated or consolidated pretrial proceedings.

**CONCLUSION**

For the reasons discussed above, the District of Montana presents the most logical choice for the necessary transfer of the Related Actions. Therefore, Plaintiffs respectfully request that the Panel enter an order pursuant to 28 U.S.C. § 1407 transferring the Related Actions, as well as any other actions that may subsequently be filed, to the District of Montana for centralized coordination or consolidation.

Dated: August 21, 2024

Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
gary@lcllp.com

*Counsel for Plaintiffs Jamilia Armstrong (Case No. 2:24-cv-00058 (D. Mont.)); Matthew Miller (Case No. 2:24-cv-05867 (C.D. Cal.)); Jessica Miller (Case No. 2:24-cv-00067 (D. Mont.)); and Jeremiah*

---

[3] *Driving Directions from Billings-Logan International Airport to the James F. Battin Federal Courthouse*, http://maps.google.com (last visited Aug. 21, 2024) (click the "Directions" arrow in the blue diamond, type "Billings-Logan International Airport" in the field labeled "Choose Starting Point", type "James F. Battin Federal Courthouse" in the field labeled "Choose Destination").
[4] *Airlines*, Billings Logan International Airport, https://www.flybillings.com/262/Airlines (last visited Aug. 21, 2024).

*Townsend (Case No. 2:24-cv-00077 (D. Mont.))*