**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE SNOWFLAKE DATA BREACH LITIGATION** | MDL NO. 3126 |

**INTERESTED PARTIES JOHN R. WILKINSON, SHANNON SPENCER,
GERRY MCAULEY, AND RYAN JOSSART'S RESPONSE TO PLAINTIFF
EMMANUEL CHAIDEZ'S MOTION FOR TRANSFER AND CENTRALIZATION
OF RELATED ACTIONS TO THE DISTRICT OF MONTANA
<u>PURSUANT TO 28 U.S. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

## I.   <u>INTRODUCTION</u>

In accordance with 28 U.S.C. § 1407, Plaintiff John R. Wilkinson, the named plaintiff in the action styled *Wilkinson v. Snowflake, Inc.*, No. 2:24-cv-00057 (D. Mont.), and Plaintiffs Shannon Spencer, Gerry McAuley, and Ryan Jossart, the named plaintiffs in the action styled *Spencer, et al. v. Ticketmaster, LLC, et al.*, No. 2:24-cv-05760 (C.D. Cal.) (collectively, "Plaintiffs"), by and through their undersigned counsel of record, respectfully submit this Interested Party Response to Plaintiff Emmanuel Chaidez's Motion for Transfer and Centralization of Related Actions to the District of Montana Pursuant to 28 U.S. § 1407 for Consolidated Pretrial Proceedings (the "Motion") (Doc. Nos. 1–3).

Plaintiffs support the Motion to the extent it requests the transfer and centralization of all Related Actions[1] to a common jurisdiction. The Related Actions involve numerous common questions of law and fact, and consolidation will serve the convenience of the parties and witnesses and will promote the just and efficient resolution of this litigation. However, compelling logistical reasons justify transferring the Related Actions to the United States District Court for the Western District of Oklahoma rather than the United States District Court for the District of Montana. The Western District of Oklahoma has ideal docket conditions and experienced jurists who will knowledgably and swiftly aid in the prosecution of the Related Actions. Therefore, Plaintiffs respectfully request the Panel transfer the Related Actions to the United States District Court for the Western District of Oklahoma.

## II.   <u>BACKGROUND</u>

The underlying nationwide litigation stems from a massive data breach in which the personally identifiable information ("PII") of hundreds of millions of individuals was

---

[1] "Related Actions" are those actions comprising this multidistrict litigation.

compromised in a data breach experienced by Defendant Snowflake, Inc. ("Snowflake") in April of 2024 (the "Data Breach" or "Breach"). Snowflake is a publicly traded cloud-based computing software company with thousands of customers, including Ticketmaster, LLC, Live Nation Entertainment, Inc., AT&T, Inc., AT&T Mobility, LLC, and Advance Auto Parts, Inc. ("Snowflake Defendants").

Shortly after the Data Breach was announced, over forty (40) class action lawsuits were filed against Snowflake and Snowflake Defendants in ten (10) different judicial districts across the nation, including: (i) the District of Montana; (ii) the Central District of California; (iii) the Eastern District of Pennsylvania; (iv) the Southern District of California; (v) the Northern District of California; (vi) the Western District of Washington; (vii) the Southern District of Florida; (viii) the Northern District of Texas; (ix) the Eastern District of North Carolina; and (x) the Northern District of Illinois. With over forty (40) lawsuits filed, and the inevitable likelihood that more will follow, consolidation and centralization are imperative in a venue that has both the experience and capacity to take on this nationwide litigation.

## III.   ARGUMENT

### A. Factors for Selection of Transferee Forums.

Pursuant to 28 U.S.C. § 1407(a), the Panel may transfer actions to "any district" and has broad discretion to choose the transferee court. There are several factors the Panel typically takes into consideration in determining the most appropriate transferee forum. *See* Federal Judicial Center, *Manual for Complex Litigation* § 20.131 (4th ed. 2004). Among these factors are (1) centrality; (2) location of evidence and witnesses; (3) overall docket conditions; (4) the pendency of other MDL matters; and (5) the overall experience of the Judge. *See* D. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* §§ 6:5, 6:7, 6:15,

6:17, 6:22 (2024 ed.). For the reasons set forth below, each of these factors weighs in favor of the Western District of Oklahoma.

**B. The Western District of Oklahoma is the Most Appropriate Venue for Transferring and Consolidating the Related Actions.**

**1. *Factors 1 and 2: The Western District of Oklahoma is a Central and an Easily Accessible Location for the Nationwide Litigation Against Snowflake and Snowflake Defendants.***

In nationwide litigation, such as the litigation here, the Panel has previously favored centrally located transferee forums. *See In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 2023 WL 3829244 (J.P.M.L. 2023) (transferring data breach class actions to a district that provided central and easily accessible location for nationwide litigation); *In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378, 1380 (J.P.M.L. 2015) (transferring cases to a forum that was "geographically central and accessible forum for th[e] nationwide litigation."); *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 2022 WL 3134131 (J.P.M.L. 2022) (transferring to a district centrally located to the nationwide litigation); *In re Deere & Co. Repair Servs. Antitrust Litig.*, 2022 WL 2133576 (J.P.M.L. 2022) (transferring cases to a geographically central district that offered a readily accessible forum for nationwide litigation); *In re RealPage, Inc., Rental Software Antitrust Litig.*, 2023 WL 2875737 (J.P.M.L. 2023) (transferring to district presenting geographically central, convenient, and accessible venue for nationwide litigation).

The Panel has continuously recognized the centrality of the Western District of Oklahoma's geographic location in selecting it as the optimal transferee forum for other nationwide litigation. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 278 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) (selecting the Western District of Oklahoma in part because it was "centrally located relative to the geographically dispersed domestic defendants, which have their headquarters in Georgia, Illinois, New Jersey, Minnesota,

and North Carolina."); *In re Gen. Motors Corp. Piston Slap Prod. Liab. Litig.*, 314 F. Supp. 2d 1386, 1388 (J.P.M.L. 2004) ("[T]he Western District of Oklahoma will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."); *In re Farmers Ins. Co., Inc., Ins. Premiums Litig.*, 295 F. Supp. 2d 1375, 1377 (J.P.M.L. 2003) (finding the Western District of Oklahoma to be the appropriate transferee forum where the district "d[id] not currently have any other multidistrict litigation [on its] docket.").

It is imperative the Panel select a transferee forum that is geographically central due to the expansive nature of the litigation. Snowflake is a global data company with more than 6,780 employees working in over forty (40) offices worldwide, including United States offices in Montana, California, Washington, New York, Colorado, Massachusetts, Georgia, and Virginia.[2] Snowflake has approximately 9,822 global customers who utilize their data services, including the Snowflake Defendants involved in this MDL. Ticketmaster is the wholly owned subsidiary of Live Nation[3], and the global leader in ticket management[4] selling "over 500 million tickets annually in 30 countries worldwide and partnering with over 12,000 global clients."[5] AT&T is one of the largest telecommunications companies in the world,[6] offering telecommunication and internet services to consumers in all fifty (50) states.[7] AT&T has approximately 5,340 locations across the

---

[2] *How It All Started*, Snowflake, https://www.snowflake.com/en/contact/ (last visited: August 20, 2024).

[3] *Subsidiaries of Live Nation Entertainment, Inc.*, https://www.sec.gov/Archives/edgar/data/1335258/000119312512075895/d277780dex211.htm (last visited August 20, 2024).

[4] *Live Nation*, https://www.livenation.com/ticketmaster/ (last visited August 20, 2024).

[5] *Id*.

[6] Nathan Reiff, *10 Biggest Telecommunications (Telecom) Companies*, INVESTOPEDIA (Sept. 29, 2023), https://www.investopedia.com/articles/markets/030216/worlds-top-10-telecommunications-companies.asp (last visited August 20, 2024).

[7] *Explore AT&T Services in your area*, AT&T, https://www.att.com/local/ (last visited August 20, 2024).

U.S.[8] and owns and operates twenty-two (22) internet data centers spanning from New York to California.[9] In addition to its nationwide presence, AT&T also has a global presence. AT&T has eight (8) internet data centers in Asia Pacific;[10] offices in Canada;[11] ninety-nine (99) data centers in Europe, the Middle East, and Africa;[12] and headquarters in Mexico City and Sao Paulo.[13] Finally, Advance Auto Parts, LLC is an automotive aftermarket parts provider[14] operating stores and Worldpac branches in the United States, Canada, Puerto Rico, and the U.S. Virgin Islands.[15] In the United States, Advance Auto Parts, LLC has stores in 49 states, including thirty (30) stores in Oklahoma.[16]

Due to Snowflake's and the Snowflake Defendants' nationwide and global presence, documents and witnesses will not be concentrated in one location, which further supports a geographically central venue such as the Western District of Oklahoma. "Before the advent of

---

[8] *Number of AT&T locations in the United States*, SCRAPEHERO A DATA COMPANY (Apr. 2, 2024), https://www.scrapehero.com/location-reports/AT%20&%20T-USA/ (last visited August 20, 2024).

[9] CLOUD AND COLOCATION, https://cloudandcolocation.com/colocation-provider/att/ (last visited August 20, 2024).

[10] *AT&T in Asia Pacific*, AT&T BUSINESS, https://www.business.att.com/industries/att-global-business-asia-pacific.html (last visited August 20, 2024).

[11] *AT&T in Canada*, AT&T BUSINESS, https://www.business.att.com/industries/att-global-business-canada.html (last visited August 20, 2024).

[12] *AT&T in Europe, Middle East, and Africa*, AT&T BUSINESS, https://www.business.att.com/industries/att-global-business-europe-middle-east-and-africa.html (last visited August 20, 2024).

[13] *AT&T in Latin America and the Caribbean*, AT&T BUSINESS, https://www.business.att.com/industries/att-global-business-latin-america-and-caribbean.html (last visited August 20, 2024).

[14] *Our Story*, Advance Auto Parts, https://corp.advanceautoparts.com/our-story/default.aspx (last visited August 20, 2024).

[15] *Id.*

[16] *Find a Location*, Advance Auto Parts, https://stores.advanceautoparts.com/ (last visited August 20, 2024)

online document depositories and the potential availability of all the documents in a case on a single web-accessible depository, the location of documents was a very important factor." *Multidistrict Litigation Manual* § 6:5. However, now, most if not all discovery and proceedings can proceed electronically. Documents can be produced electronically, witnesses can be deposed via video conference, and attorneys often appear virtually for court hearings. Thus, while Snowflake may have its headquarters in Montana, this is of diminished importance due to the rise of technology. Rather, the key to success in managing this litigation will be selecting a transferee forum that has the capacity and experience to guide the litigation to resolution. *See In re: Wright Med. Tech., Inc., Conserve Hip Implant Prod. Liab. Litig.*, 844 F. Supp. 2d 1371, 1373 (J.P.M.L. 2012) (finding that because the cases involved medical devices that were marketed and sold throughout the nation, the Northern District of Georgia was an appropriate transferee forum because it was "central, accessible, and enjoy[ed] favorable docket conditions," even though the defendant was not based in Georgia).

Not only is the Western District of Oklahoma centrally located, but it is also an easily accessible metropolitan location, which the Panel favors when selecting transferee forums. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 196 F. Supp. 2d 1375, 1376–77 (J.P.M.L. 2002) (transferring litigation to a district court "in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services."); *In re Laughlin Prod., Inc. Patent Litig.,* 240 F. Supp. 2d 1358, 1359 (J.P.M.L. 2003) (transferring to "an accessible metropolitan district"). The Western District of Oklahoma is situated in Oklahoma City, a major metropolitan area offering convenient travel and readily available accommodations. The City's largest airport offers travel via five major passenger airlines and nonstop service to twenty-one (21) cities across the United States, including

both coasts as well as northern and southern cities.[17] The city has numerous forms of ground transportation, including Uber,[18] Lyft,[19] and an extensive public transportation system.[20] Visitors can choose from a wide variety of hotel accommodations at affordable price points, including hotels near the courthouse and the airport.[21] Oklahoma City combines western charm with its modern metropolitan atmosphere to create an environment that is conducive to handling complex litigation such as this.

The Western District of Oklahoma is centrally located, easily accessible to all parties, and is located in a bustling metropolitan area. Hence, the Western District of Oklahoma is the most favorable forum for the litigation against Snowflake and the Snowflake Defendants.

> **2.** *Factor 3: The Western District of Oklahoma's Docket Statistics Support Transfer and Consolidation in the Western District of Oklahoma.*

Further, the Western District of Oklahoma's favorable docket conditions warrant its selection as the transferee forum. "The Panel has expressly stated that it will consider docket conditions in selecting a transferee district." *Multidistrict Litigation Manual* § 6:17; *see also In re: TransData, Inc., Smart Meters Pat. Litig.*, 830 F. Supp. 2d at 1382 (transferring cases to the Western District of Oklahoma after finding the Western District of Oklahoma's docket conditions

---

[17] *See Airports*, CITY OF OKLAHOMA CITY, https://www.okc.gov/residents/airports (last visited August 20, 2024).

[18] *See Getting around Oklahoma City, OK*, UBER, https://www.uber.com/global/en/cities/oklahoma-city/?utm_campaign=CM2198659-search-bing-brand_1_-99_US-National_o-d_web_acq_cpc_en_Generic_Phrase_uber_kwd-75729274461184%3Aloc-71253__1211662316540068_e_c&utm_source=bing (last visited August 20, 2024).

[19] *See Cities*, LYFT, https://www.lyft.com/rider/cities/oklahoma-city-ok (last visited August 20, 2024).

[20] *See* EMBARK, www.embarkok.com (last visited August 20, 2024) (offering transportation by bus, ferry, streetcar, bike share, and rideshare).

[21] *See Oklahoma City Hotels*, OKC THE MODERN FRONTIER, www.visitokc.com/hotels/ (last visited August 20, 2024) (offering hotel selections in downtown, Bricktown, and near the airport).

were more favorable than other proposed transferee forums); *In re: Webvention LLC ('294) Pat. Litig.*, 831 F. Supp. 2d 1366, 1367 (J.P.M.L. 2011) (transferring cases to a district court with favorable docket conditions where the other proposed transferee forums had large civil caseloads); *In re Educational Testing Serv. PLT 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363 (J.P.M.L. 2004) (transfer to district with favorable caseload conditions); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 802 F. Supp. 2d 1370 (J.P.M.L. 2011) (transfer to district that "enjoys general docket conditions conducive to the efficient resolution of this litigation"). As demonstrated below, the Western District of Oklahoma has very favorable dockets conditions that will facilitate efficient resolution of this litigation.

The most recent Federal Court Management and Caseload Statistics for the Western District of Oklahoma indicate that it is not unduly congested, and that it has the capacity to handle this litigation.[22] The Western District of Oklahoma has the second least busy docket out of the ten districts with pending litigation against Snowflake and the Snowflake Defendants. Aside from the District of Montana, the Western District of Oklahoma has the second lowest number of total cases filed (1,262) and pending (1,059) in 2024.[23] Of all the forums mentioned, the Western District of Oklahoma also has one of the smallest percentages of cases pending for three years or more at only 6.5%.[24] Additionally, the Western District of Oklahoma has a very favorable disposition rate with the median civil case being resolved in a mere 7.4 months after filing.[25] These statistics demonstrate the Western District of Oklahoma's ability to resolve this case in a timely and efficient fashion.

---

[22] *See* Exs. 1–3.

[23] *See* Ex. 1.

[24] *See* Ex. 2.

[25] *Id.*

**U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Period Ending March 31, 2024[26]**

| District Court | Total Number of Filed Cases | Total Number of Pending Cases |
|---|---|---|
| Western District of Oklahoma | 1,262 | 1,059 |
| District of Montana | 614 | 576 |
| Eastern District of Pennsylvania | 7,697 | 6,703 |
| Southern District of California | 2,523 | 1,984 |
| Northern District of California | 6,934 | 13,564 |
| Western District of Washington | 3,065 | 2,390 |
| Southern District of Florida | 9,867 | 3,677 |
| Northern District of Texas | 5,316 | 3,867 |
| Eastern District of North Carolina | 2,812 | 3,478 |
| Northern District of Illinois | 18,072 | 19,356 |
| Central District of California | 16,161 | 10,362 |

**U.S. District Courts—Percent of Civil Cases Over 3 Years Old During the 12-Month Period Ending June 30, 2024[27]**

| District Court | Total Percent of Civil Cases Over 3 Years Old |
|---|---|
| Western District of Oklahoma | 6.5% |
| District of Montana | 15.3% |
| Central District of California | 8.8% |
| Eastern District of Pennsylvania | 27.8% |
| Southern District of California | 11.5% |
| Northern District of California | 25.9% |
| Western District of Washington | 5.8% |
| Southern District of Florida | 3.6% |
| Northern District of Texas | 11.0% |
| Eastern District of North Carolina | 6.0% |
| Northern District of Illinois | 12.8% |

---

[26] *See* Ex. 1.

[27] *See* Ex. 2.

As evidenced above, the Western District of Oklahoma boasts many favorable docket statistics that are worthy of the Panel's consideration. Therefore, this factor weighs in favor of the Western District of Oklahoma.

### 3.  *Factor 4: The Western District of Oklahoma Currently Does Not Have Any Multidistrict Litigation Pending.*

What makes the Western District of Oklahoma the most conducive to this nationwide litigation, is the fact that the Western District of Oklahoma currently does not have any MDL actions pending.[28] "The Panel has expressly stated that the fact a district has no pending dockets of multidistrict matters transferred by the Panel is a factor that favors transfer to that district." *Multidistrict Litigation Manual* § 6:22. This is in stark contrast to the other jurisdictions with litigation pending against Snowflake and the Snowflake Defendants. For comparison, the Central District of California has five (5) MDLs pending, the Eastern District of Pennsylvania has seven (7) MDLs pending, the Southern District of California has two (2) MDLs pending, the Northern District of California has eighteen (18) MDLs pending, the Southern District of Florida has ten (10) MDLs pending, the Northern District of Texas has three (3) MDLs pending, and the Northern District of Illinois has seventeen (17) MDLs pending.[29] The absence of other multidistrict litigation tips the scale in favor of the Western District of Oklahoma. *See In re Teflon Prod. Liab. Litig.*, 416 F. Supp. 2d 1364, 1365 (J.P.M.L. 2006) (transferring cases to the Southern District of Iowa because although there were an array of suitable transferee districts, the Southern District of Iowa provided a geographically central location, did not have any other multidistrict litigation dockets, and enjoyed general docket conditions); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 290 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003) (transferring actions to the Middle District of Pennsylvania

---

[28] *See* Ex. 3.

[29] *Id.*

because it did "not currently have multidistrict dockets" and enjoyed favorable docket conditions); *In re: Actos Prod. Liab. Litig.*, 840 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) (transferring nationwide litigation with actions pending in numerous districts to a transferee forum that had no other multidistrict litigation pending).

    **4.**    ***Factor 5: The Western District of Oklahoma has the Expertise, Experience, and Resources Necessary to Manage the Nationwide Litigation Against Snowflake and the Snowflake Defendants.***

Lastly, "[t]he Panel has repeatedly indicated its preference for transferring multidistrict cases to courts with experience handling complex cases." *Multidistrict Litigation Manual* § 6:15. As the Panel has found many times before, the Western District of Oklahoma is well-equipped with the experience, resources, and jurists to handle the demands of this multidistrict litigation. *See In re: Cox Enterprises, Inc., Set-Top Cable Television Box Antitrust Litig.*, 626 F. Supp. 2d 1343 (J.P.M.L. 2009) (transferring cases to the Western District of Oklahoma where the transferee judge had the "time and experience to steer th[e] litigation on an expeditious course"); *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 278 F. Supp. 3d at 1378 (transferring cases to the Western District of Oklahoma where the transferee judge was "an experienced jurist" who would "steer th[e] litigation on a prudent course"); *In re Gen. Motors Corp. Piston Slap Prod. Liab. Litig.*, 314 F. Supp. 2d at 1387 (The Western District of Oklahoma is "equipped with the resources that this complex docket is likely to require.").

As this Panel has already found, the Western District of Oklahoma is "equipped with the resources that this complex docket is likely to require." *In re Gen. Motors Corp. Piston Slap Prod. Liab. Litig.*, 314 F. Supp. 2d at 1388. In fact, according to the Judicial Panel on Multidistrict Litigation – Judicial Business 2023 statistics, since September of 1968, the Panel has transferred

234 MDLs to the Western District of Oklahoma, and only 4 into the District of Montana.[30] Therefore, the Western District of Oklahoma has the experience and expertise to efficiently manage this MDL and is the most compelling transferee forum for this multidistrict litigation.

**IV.**     **CONCLUSION**

The Western District of Oklahoma is optimally situated, experienced, and capable of effectively managing this nationwide litigation. For these reasons, Plaintiffs respectfully request an Order granting Transfer and Consolidation to the Western District of Oklahoma. The Western District of Oklahoma has the resources and capacity to properly oversee this litigation. Alternatively, Plaintiffs support transfer and consolidation of the actions in the District of Montana.

Date: August 21, 2024                         Respectfully Submitted,

                                              */s/ Kennedy M. Brian*
                                              Kennedy M. Brian, (OBA # 34617)
                                              **FEDERMAN & SHERWOOD**
                                              10205 N. Pennsylvania Avenue
                                              Oklahoma City, OK 73120
                                              Telephone: (405) 235-1560
                                              Facsimile: (405) 239-2112
                                              kpb@federmanlaw.com

                                              ***Attorney for Plaintiffs John R. Wilkinson,
                                              Shannon Spencer, Gerry McAuley, and
                                              Ryan Jossart***

---

[30] *See* Ex. 4.

**<u>PROOF OF SERVICE</u>**

In compliance with the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that the foregoing document was electronically filed with the Court of the Judicial Panel on Multidistrict Litigation using the CM/ECF system and was electronically served on all on counsel via the CM/ECF system.

Date: August 21, 2024

*/s/ Kennedy M. Brian*
Kennedy M. Brian