**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SNOWFLAKE DATA SECURITY BREACH LITIGATION | MDL No. 3126 |

**RESPONSE OF PLAINTIFFS JODI CABALLERO, OWEN CONLAN, BRYAN CURTIS, KELLEY DAVIS, CHARLES FITZGERALD, BRENDAN HEALY, CHRIS RIPPEL, MICHAEL WALTERS, TERRY NEBLOCK AND JAMILLAH SHERMAN IN OPPOSITION TO MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Steven A. Schwartz
Beena M. McDonald
Alex M. Kashurba
Marissa N. Pembroke
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
*Haverford, PA 19041*
*Tel: (610) 642-8500*
*sas@chimicles.com*
*bmm@chimicles.com*
*amk@chimicles.com*
*mnp@chimicles.com*

James J. Rosemergy
**CAREY, DANIS & LOWE**
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700
*jrosemergy@careydanis.com*

David B. Jonelis
**LAVELY & SINGER PC**
*2049 Century Park East, Suite 2400*
*Los Angeles, California 90067-2906*
*Telephone: (310) 556-3501*
*djonelis@lavelysinger.com*

## I.  INTRODUCTION

This Response is filed on behalf of Plaintiffs Jodi Caballero, Owen Conlan, Bryan Curtis, Kelley Davis, Charles Fitzgerald, Brendan Healy, Chris Rippel, and Michael Walters ("Caballero Plaintiffs"), the plaintiffs in *Caballero, et al. v. Live Nation Entertainment, Inc and Ticketmaster LLL*, Case No. 2:24-cv-04625-JFW-PVC (C.D. Cal.) ("Caballero Complaint"); Plaintiff Terry Neblock in *Neblock v. Advance Auto Parts, Inc.*, Case No. 1:24-cv-00960 (D. Del.); and Plaintiff Jamillah Sherman in *Sherman v. The Neiman Marcus Group LLC*, Case No. 1:24-cv-00959 (D. Del.) (collectively "Caballero/Neblock/Sherman Plaintiffs").

Plaintiff *Chaidez*[1] seeks coordination or consolidation, pursuant to 28 U.S.C. § 1407, of cases to the District of Montana related to a series of data breaches that occurred, as alleged, with Snowflake as the "hub" of a data breach and Live Nation/Ticketmaster Advance Auto, Neiman Marcus and AT&T (and unnamed others) as the "spokes." But the *Chaidez* motion exaggerates the commonalties across the cases. Though Snowflake obviously has some connection to all the cases in this proposed consolidated proceeding, the Caballero/Neblock/Sherman Plaintiffs question whether the formation of an MDL actually makes sense on these facts.

More specifically, Snowflake, Inc. was not named as a defendant in the cases filed by the Caballero/Neblock/Sherman Plaintiffs, nor was Snowflake named in most of the other cases filed against Live Nation/Ticketmaster in the Central District of California. Indeed, Snowflake was only named as a defendant in 27 of out the currently 66 related actions, most of which (20) are filings in the District of Montana. *See* Schedule of Actions, Exhibit 1. The claims for liability and damages against Live Nation/Ticketmaster, Advance Auto, Neiman Marcus and AT&T (collectively "Spoke Defendants") are different from each other. The circumstances surrounding how each of

---

[1] *Chaidez v. Snowflake, Inc.*, No. 2:24-cv-00050 ("Chaidez Complaint").

2

the Spoke Defendants allowed hackers to compromise *their* database systems are unique to those Defendants. Each Spoke Defendant has different purported arbitration/class waiver provisions. Furthermore, each allowed hackers to obtain different types of customer data; for example, customers' exposed information potentially includes:

- In cases where AT&T and Cricket Wireless are defendants, names, dates of birth, Social Security numbers, and the customers' phone number, the phone numbers that the customer called or texted, the number of times the customer interacted with each phone number, call durations, and the customers' locations in the form of cell site ID numbers (*see Montgomery v. AT&T, Inc.*, No. 3:24-cv-05581 (W.D. Washington) and *Alexis Morgan v. Cricket Wireless, LLC*, No. 1:24-cv-05760 (N.D. Georgia);

- In cases where Advance Auto Parts is a defendant, names, email, phone numbers, address, order and sales histories, loyalty rewards numbers, and payment information (*see Neblock v. Advance Auto Parts, Inc.*, No. 1:24-cv-00960 (D. Del.);

- In cases where Neiman Marcus is a defendant, names, emails, addresses, phone numbers, dates of birth, partial Social Security numbers, credit card numbers, transaction data, and employee identification numbers (*see Sherman v. The Neiman Marcus Group LLC*, No. 1:24-cv-00959 (D. Del.); and

- In cases where Ticketmaster and Live Nation Entertainment are defendants, names, email addresses, phone numbers, order histories, including prior tickets purchased, payment information, including partial credit card numbers, and expiration dates (*see Caballero et. al. v Live Nation Ent., Inc. and Ticketmaster LLC*, No. 2:24-cv-04625 (C.D. Cal.).

Critically, while Snowflake hosted at least some of the Spoke Defendants' data, it is not clear that Snowflake itself or its databases were actually hacked. Rather, Snowflake takes the position that the hackers *hacked into the Spoke Defendants' databases* due to the failure of the Spoke Defendants to properly protect their own credentials and databases (in part because they failed to require multifactor authentication ("MFA")) which allowed hackers to use the stolen Spoke Defendants' credentials to access the Spoke Defendants' data that was hosted by Snowflake.

Accordingly, as noted above, plaintiffs in most of the cases did not name Snowflake as a defendant, and whether Snowflake is ultimately named as a defendant in the various Spoke Defendant cases will only be determined after leadership is appointed in those cases and

consolidated complaints are filed against the Spoke Defendants.[2] Even if Snowflake is named as a defendant, any efficiencies gained by transferring and consolidating all of the Spoke Defendant cases to a single forum (which will create its own complications) will likely be offset by the inefficiencies created by having to shoehorn so many unique claims, based upon unique facts, into a single proceeding. Moreover, there are still efficiencies to be realized by consolidation of the individual Spoke Defendant cases proceeding as separate cases in the appropriate forums, with any common discovery from Snowflake coordinated as appropriate.

In the event the Panel determines that a Snowflake MDL should be created, the connection to Montana is purely superficial, and the Caballero/Neblock/Sherman Plaintiffs thus disagree that it is an appropriate transferee forum. None of the Spoke Defendants have any connection to Montana; Snowflake has no actual, physical connection to Montana other than a "paper" connection; and Montana is a geographically inconvenient forum for all parties and counsel.

Thus, the Caballero/Neblock/Sherman Plaintiffs believe that if an MDL is formed, the District of Delaware is the most appropriate forum, because all the defendants have a connection with Delaware (they are all incorporated in Delaware[3]) which will allow the transferee court to conduct both pretrial and trial proceedings, and because Delaware is a convenient forum. Alternatively, the Central District of California is the next most appropriate forum because the Central District is where the first Spoke Defendant (Live Nation/Ticketmaster) case was filed and

---

[2] To be clear, the Caballero/Neblock/Sherman Plaintiffs do not intend to suggest that Snowflake is blameless in connection with breaches of the Spoke Defendants' data or that Snowflake should absolutely not be named as a defendant in any consolidated complaint, but only point out that there are factual and strategic issues that will need to be carefully evaluated before there is certainty whether Snowflake should be a defendant in some or all cases or simply a material witness.

[3] One complaint named Cricket Wireless, LLC as a defendant. Cricket Wireless is a wholly owned subsidiary of AT&T and Delaware limited liability company. *See Alexis Morgan v. Cricket Wireless, LLC*, No. 1:24-cv-03253 (N.D Ga.).

4

where plaintiffs in the Live Nation/Ticketmaster cases now support consolidation, Snowflake has a real, concrete connection with California (its actual headquarters are in California), it is a convenient forum, and because Judge Sherylin Peace Garnett (who is assigned to the first filed *Ryan*[4] case) would be an excellent choice to preside over an MDL.

## II.   FACTUAL BACKGROUND

Caballero/Neblock/Sherman Plaintiffs count 66 cases pending in 12 federal district courts filed by plaintiffs who are victims of data breaches implicating various Spoke Defendants, including Ticketmaster, AT&T, Advance Auto Parts, and more recently Neiman Marcus.[5] The cases allege a common failure to safeguard the plaintiffs' and proposed class members' personal information, resulting in a data breach. While some of the lawsuits named Snowflake as the primary defendant or co-defendant, not even half of the lawsuits name Snowflake. This is because, contrary to what the *Chaidez* motion would like this Panel to believe, this is not one massive data breach. The Spoke Defendants, and Snowflake, each face unique theories of liability for having caused the data breaches. Indeed, the cases against the Spoke Defendants differ in regard to the theory of liability (how they were hacked) and damages (what information was stolen). Moreover, Snowflake has adamantly maintained that its systems were not attacked at all, and that the breach events were not caused by a vulnerability, misconfiguration, or breach of Snowflake's platform; rather it was in part caused by the Spoke Defendants' failure to enable MFA and/or effectively maintain security of its own credentials to protect against unauthorized access to their databases that happened to be hosted on Snowflakes servers.[6]

---

[4] *Cynthia Ryan, et al.*, *v. Ticketmaster, LLC and Live Nation Entertainment, Inc.*, No. 2:24-cv-04482 (C.D. Cal.).
[5] *Reichbart v. Neiman Marcus Group LLC*, *et al.*, No. 0:24-cv-61386-DSL (S.D. Fla.).
[6] https://cloud.google.com/blog/topics/threat-intelligence/unc5537-snowflake-data-theft-extortion (last visited Aug. 20, 2024).

Such unique facts defeat 28 U.S.C. § 1407's purpose of transfer and consolidation. Indeed, it might be prejudicial for customers of Spoke Defendant Live Nation/Ticketmaster to have their claims be linked to the claims of customers of Spoke Defendant Advance Auto and *vice versa*, and it might be prejudicial for the pace of the prosecution of customers of one Spoke Defendant to be hampered by issues unique with respect to the claims of customers of other Spoke Defendants.

### III. LEGAL STANDARD

28 U.S.C. § 1407 provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. 28 U.S.C. § 1407(a). The presence of common issues does not itself mandate consolidation and transfer, however. The Judicial Panel on Multidistrict Litigation shall order such transfer "upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. *Id.*

### IV. ARGUMENT

#### A. The Creation of an MDL is Not Warranted Given That There is Not a Sufficient Critical Mass of Common Questions of Fact

The threshold requirement for centralization pursuant to § 1407 is the presence of common questions of fact. *See* 28 U.S.C. § 1407. The *Chaidez* motion argues that the cases "all involve common issues of fact – a massive data breach." *See Chaidez* motion, at pg. 4. That argument overstates the facts, however, as the factual allegations set forth in all the complaints listed in the Schedule of Actions do not arise from a critical mass of common nucleus of material fact. While the cases against the individual Spoke Defendants are similar in that each alleges a common failure to safeguard personal information resulting in a data breach, their liability largely hinges upon why each of the individual Spoke Defendants allowed hackers to compromise their systems. While

6

Snowflake exists as a common data host, it remains unclear the extent of how much liability Snowflake actually shares (if any) with the individual Spoke Defendants.

Liability for each individual Spoke Defendant will turn on facts unique to each of those individual Spoke Defendants and perhaps Snowflake's specific communications and conduct with each Spoke Defendant. To the extent that Snowflake has some joint liability, the various cases against each of each of the individual Spoke Defendants and the facts supporting that liability will likely be distinct from each other. Moreover, the cases differ in terms of damages. The type of information that was stolen in the data breaches varies across the cases. While it could be true that Snowflake hosted the data for the Spoke Defendants, that is simply not enough to warrant centralization pursuant to § 1407 in light of the allegations that the actual breaches of credentials that allowed unfettered access to that data occurred elsewhere, as discussed above. The extent of Snowflake's liability is likely to be very case-specific.

> **B.  Coordination of Discovery Across the Cases Naming Snowflake and the Cases Naming Live Nation/Ticketmaster, Advanced Auto Parts, Neiman Marcus and AT&T will be Manageable Without an MDL**

The convenience of the parties and prevention of duplicative discovery is a key reason that typically favors multi-district transfer and consolidation. *See* 28 U.S.C. § 1407; *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d at 1373 (J.P.M.L 2023). Here, however, if an MDL is formed, there will still be a need to create separate tracks, with separate complaints, and perhaps separate plaintiff leadership and definitely different defense leadership, for the cases on behalf of the customers of the individual Spoke Defendants. Any efficiency benefits of managing and coordinating those tracks/cases will likely be outweighed by the complications that arise from such series of separate, distinct cases within a single MDL, and will likely not be any more efficient than simply having individual Spoke Defendant cases coordinate any common discovery against

Snowflake. There are presently only four individual Spoke Defendants, hardly enough to justify an MDL or prevent effective coordination of common discovery. The more efficient path would be the creation of consolidated proceedings, either via Section 1404, Section 1407, Rule 42(a), or some combination thereof, pertaining to each of the Spoke Defendants encourage efficiencies with respect to those claims without dragging disparate claims together that will inevitably slow one another down.

      **C.    If the Panel Creates an MDL, the District of Delaware is the Most Appropriate Forum**

            **1.    <u>Montana's Connection to This Litigation is Wholly Superficial</u>**

Caballero/Neblock/Sherman Plaintiffs disagree that the District of Montana is the most appropriate venue for an MDL, if one is to be created. The *Chaidez* motion correctly states that the decision to select an appropriate transferee forum involves a "balancing test based on the nuances of a particular litigation." *Chaidez* motion at pg. 6. However, the *Chaidez* motion applies the wrong facts relevant to the balancing test. Montana has virtually no connection with any defendant, including Snowflake, or any issue in any of the cases.

The *Chaidez* motion incorrectly states: "Montana is Snowflake's state of incorporation and headquarters, and it does significant business in Montana. A substantial portion of the events giving rise to Plaintiff's claims arise in Montana and key witnesses and documents are located there." *Chaidez* motion, at pgs. 1, 8. But Snowflake is not incorporated in Montana; it is incorporated in Delaware. More important, the *Chaidez* motion inaccurately states that Snowflake does "significant business in Montana," and "a significant portion of the alleged conduct occurred here." *Chaidez* motion at pgs. 1, 7. Snowflake does not have a real headquarters or operations in Montana and does not view Bozeman, Montana as its headquarters. Per its May 26, 2021 Form 8-

8

K filed with the SEC (Exhibit 2), Snowflake's designation of its headquarters is a matter of legal compliance, and is not intended to be indicative of operations activity:

> We are a Delaware corporation with a globally distributed workforce and no corporate headquarters. Under the Securities and Exchange Commission's rules, we are required to designate a "principal executive office." For purposes of this report, we have designated our office in Bozeman, Montana as our principal executive office, as that is where our Chief Executive Officer and Chief Financial Officer are based.

Snowflake's Bozeman "headquarters" is located at 106 E Babcock St, Suite 3A, Bozeman, MT 59715. This is how that building appears on Google Street View:[7]



This would be a modest footprint for a massive software company if it was the entire building, but it is not.

---

[7] *See* https://bit.ly/3XaX1sj, last accessed 8/20/2024.

Snowflake's so-called headquarters are in Suite 3A of this building, which it shares with a number of other business entities:



Clearly, both Snowflake's representations to federal regulators and common sense make it obvious that a suite in a small office building in Montana is not a business nerve center for a gargantuan cloud-based data warehousing company in a way that makes a difference when it comes to where key witnesses and documents are likely to be located any more than if Snowflake listed a random employee's basement as its headquarters for regulatory purposes.

Indeed, by its very nature as a cloud storage company, one would assume that key documents will exist in digital form accessible from anywhere with an internet connection. Moreover, key witnesses will likely be "globally distributed" per Snowflake's own admission. And as discussed below, Snowflake's core operations are based in California. Snowflake's

10

connection to Montana is thus purely superficial and should be given little, if any, weight in determining a transferee venue.

In contrast, Snowflake, Live Nation, Advance Auto, AT&T and Neiman Marcus are each incorporated in Delaware.[8] Thus, the District of Delaware is the only jurisdiction with a connection to and jurisdiction over all defendants. This connection is important because, unlike the District of Montana, if the cases are transferred to the District of Delaware, the Court could not only conduct all pretrial proceedings, but would also have jurisdiction to conduct class action trials. That dual capacity and the resulting continuity would result in far more efficiency than transfer to the District of Montana or any other jurisdiction.

### 2. The District of Delaware is a Convenient and Efficient Forum

It would be inconvenient to send the MDL to Montana, which is a geographically remote and distant venue. The Panel should select a district that is convenient and accessible for all parties. The District of Delaware fits the bill. *See In re Intel Corp. Microprocessor Antitrust Litig.*, 403 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005) ("In concluding that the District of Delaware is an appropriate forum for this docket, we observe that i) the district is an accessible location that is geographically convenient for many of this docket's litigants and counsel; ii) the district is well equipped with the resources that this complex antitrust docket is likely to require; and iii) the district is the near unanimous choice of all responding parties."). The federal court in Wilmington, Delaware is a short train, plane, or car ride for parties and counsel located on the East Coast, and is easily accessible to and from multiple airports, including Philadelphia and Baltimore for the parties and counsel located throughout the country. The federal courthouse is 25 minutes from

---

[8] Live Nation's subsidiary Ticketmaster is a Virginia limited liability company. AT&T's subsidiary Cricket Wireless is a Delaware limited liability company.

11

Philadelphia International Airport, three minutes from the Wilmington Amtrak station, and 80 miles from Baltimore/Washington International Thurgood Marshall Airport. The ease of travel to Delaware versus Montana is self-evident and confirms that Delaware is the more convenient forum.

Delaware also has the experience to make it uniquely well-equipped to handle this litigation. For example, while the *Chaidez* motion points out that Montana is one of the least-congested federal districts, it ignores that it has presided over zero MDLs, compared to Delaware, which currently presides over 5 MDLs. To be very clear, Caballero/Neblock/Sherman Plaintiffs have no doubt that Judge Morris and other courthouse personnel in Montana could ably handle this litigation if called upon to do so. Nevertheless, it remains the case that a multi-pronged hub-and-spoke MDL proceeding, which is in some respects a Russian-nesting-egg-style MDL-within-an-MDL, naturally lends itself to a district that already has infrastructure and procedures in place to manage the added layers of complexity inherent therein.

Thus, if the Panel creates an MDL, which will involve coordination of discovery, resources, and the determination of fact and law across various related cases and specially related to the individual Spoke Defendants, then it should be sent to Delaware, which has specific MDL experience and thus the capability to handle it efficiently. Delaware also has experience handling consumer privacy litigation, having presided over *In re: Google, Inc. Cookie Placement Consumer Privacy Litigation*, 1:12-md-02358-JDW (D. Del.).

Delaware is not burdened by an unmanageable caseload. The number of pending cases per Judgeship has decreased in Delaware since 2019.[9] The average time to trial in Delaware is 32.9

---

[9] *See* judicial statistics compiled at Federal Court Management Statistics located at: chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.uscourts.gov/file/78871/download (last visited Aug. 21, 2024).

months. *Id*. To the extent that any efficiency concerns remain, it is worth noting that the Third Circuit often assigns out-of-district judges to help with caseload. *See* Designation of Circuit Judge to Hold a District Court Within the Circuit, *Penny Ninivaggi, et al. v. Univ. of Delaware*, No. 1:20-cv-01478 (D. Del), attached as Exhibit 3. Delaware is well-equipped to handle this litigation from inception through trial and is the most logical forum to oversee a consolidated proceeding.

### D. In the Alternative, The Central District of California is an Appropriate Forum

In the alternative, centralization to the Honorable Sherilyn Peace Garnett of the Central District of California would be the next best most appropriate forum.

#### 1. Snowflake has Deep Connections to California

Despite listing its "paper" headquarters in Montana, Snowflake's actual nucleus of operational activity is California. As reported in the press:

> Snowflake will still have a large operation in Silicon Valley, and even went through a recent massive redesign of its San Mateo office to prepare for the eventual return of employees. "While San Mateo continues to remain an important location for us, we do not have a single office that is at the center of Snowflake's operations," a spokesperson said in an e-mail.[10]

Thus, Snowflake has real connections, including a real, large headquarters, in California. To the extent that the location of witnesses, documents, and the like are an important consideration in determining an appropriate transferee venue, California has as strong a connection to those factors as any other venue as it pertains to Snowflake (and Live Nation and Ticketmaster, which have their headquarters in California).

#### 2. The Central District of California is the District Where the Initial Spoke Defendant Cases Were Filed and Where Consolidation is Supported

---

[10] *See* https://www.cnbc.com/2021/05/26/snowflake-moves-executive-office-from-california-to-bozeman-montana.html (last visited Aug. 21, 2024).

Beginning on May 29, 2024, sixteen cases have been filed in the Central District of California on behalf of classes of individuals or entities who provided personal information to defendants Ticketmaster and Live Nation. Each case alleges a common failure by defendants to safeguard that personal information, resulting in the data breach. The *Ryan* case was filed on May 29, 2024 and is the first filed case against Defendant-Customer Ticketmaster. To the extent the JPML finds that an MDL is to be created and declines to consolidate the cases in Delaware, then it should be sent to the Central District of California where the first case was filed against Ticketmaster/Live Nation.

In pleadings pending in the Central District of California, plaintiffs filed motions in support of consolidation of all cases (including ones filed in other districts) with the first-filed *Ryan* case pending before Judge Garnett. *See Cynthia Ryan, et al.*, *v. Ticketmaster, LLC and Live Nation Entertainment, Inc.*, No. 2:24-cv-04482 (C.D. Cal.) at ECF Nos. 32, 36, 37. That motion is fully briefed and has been taken under submission. Thus, the Central District of California is an appropriate transferee forum. *See In re Am. Online Spin-Off Accounts Litig.*, 310 F. Supp. 2d 1369 (J.P.M.L. 2004) (selecting the Central District of California as transferee forum because it would serve the convenience of the parties and witnesses, promote the just and efficient conduct of the litigation and a potential tag-alone case was pending there); *In re Qwest Communs. Corp. Payphone Serv. Providers Comp. Litig.*, 219 F. Supp. 2d 1356 (J.P.M.L. 2002) (selecting the Central District of California as transferee forum because most of the actions were pending there and most plaintiffs supported centralization there). Judge Garnett is a highly respected and experienced jurist who has presided over extensive litigation in the Central District of California and is well-positioned to benefit from the experience of her many colleagues in the district who routinely preside over consolidated multidistrict cases.

### 3. The Central District of California is a Convenient and Efficient Forum for the Litigants

The Central District of California is well suited to handle the travel of all parties and witnesses to the litigation. The district's location in Los Angeles and proximity to Los Angeles International Airport (LAX) is recognized as making it well-equipped to handle the influx of visitors from the litigation. Thus, no parties or witnesses would be prejudiced by the Central District of California's geographic location, and would in fact benefit from the relative ease of travel to the district.

Importantly, the Central District of California simply has a wealth of experience with MDL cases unmatched by almost any other district in the country. Due to its proven track record handling MDLs, the Central District of California provides certain resources, opportunities and abilities to handle the logistics associated with this litigation that the District of Montana simply lacks given its relative inexperience with MDLs.

## V. CONCLUSION

The Caballero/Neblock/Sherman Plaintiffs respectfully submit that the Panel deny the request to create an MDL pursuant to 28 U.S.C. § 1407. Alternatively, they request that the Panel transfer the cases to the District of Delaware or the Central District of California for coordinated or consolidated pretrial proceedings before Judge Sherilyn Peace Garnett.

Dated: August 21, 2024          Respectfully Submitted,

By:   */s/ Steven A. Schwartz*
Steven A. Schwartz
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
*sas@chimicles.com*

*Additional counsel information on the next page*

Beena M. McDonald
Alex M. Kashurba
Marissa Pembroke
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: 610-649-3633
*bmm@chimicles.com*
*amk@chimicles.com*
*mnp@chimicles.com*

James J. Rosemergy
**CAREY, DANIS & LOWE**
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700
Fax: (314) 721-0905
*jrosemergy@careydanis.com*

David B. Jonelis
**LAVELY & SINGER PC**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615
*djonelis@lavelysinger.com*

*Counsel for Plaintiffs Jodi Caballero, Owen Conlan, Bryan Curtis, Kelley Davis, Charles Fitzgerald, Brendan Healy, Chris Rippel, Michael Walters, Terry Neblock and Jamillah Sherman*