**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SNOWFLAKE, INC. DATA SECURITY BREACH LITIGATION | MDL No. 3126 |

**PLAINTIFFS CHARLES MCGEE AND GREGORY VOGEL'S RESPONSE IN SUPPORT OF MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS TO THE DISTRICT OF MONTANA PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS**

## I.      INTRODUCTION

Plaintiff Charles McGee, who filed the action *McGee v. Advance Auto Parts, Inc.*, 5:24-cv-00352 (the "McGee Action") and Plaintiff Gregory Vogel, who filed the action *Vogel v. Advance Auto Parts, Inc*. 5:24-cv-00361 (the "Vogel Action") (collectively the "Responding Plaintiffs") respectfully submit this response, pursuant to 28 U.S.C. § 1407 and Panel Rule 6.2(e), in support of Plaintiff Emmanuel Chaidez's Corrected Motion for Transfer and Centralization of Related Actions to the District of Montana Pursuant to 28 U.S.C. § 1407 for Consolidated Pretrial Proceedings.  (ECF No. 1).

Responding Plaintiffs support the Motion for Transfer and Centralization in Montana out of a desire for an efficient, equitable and deliberate approach to litigating both the Advance Auto data breach litigation and the Snowflake JPML.  The Related Actions arise from a data breach of Snowflake's system and the resulting effects on numerous client defendants. As a result, the Related Actions involve many overlapping common questions of fact. Consequently, transfer would serve the convenience of the parties and witnesses and promote the just and efficient

conduct of the litigation centralizing these cases.  Responding Plaintiffs are firmly convinced that Plaintiff Chaidez's motion to transfer and centralize these and the other Snowflake related actions will result in a more organized handling of the litigation, particularly in early stages, with little duplication.   Plaintiffs believe the District of Montana is the most appropriate forum for centralization because, among other things, Snowflake's headquarters is located in Bozeman, Montana and many of the witnesses and documents presumably are located there.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This case involves multiple class action complaints (the "Related Actions") filed against multiple defendants utilizing Snowflake, Inc. ("Snowflake") for data management services. All complaints are linked to a data breach involving Snowflake's systems which compromised personal information held by Snowflake (as a "hub") for various other clients. These clients are various individual Defendants in the Related Actions.  The claims of Responding Plaintiff's arise from Snowflake's handling of data for Advance Auto Parts/Advance Auto Stores, Inc. Specifically, Snowflake managed files containing the personal information of current and former employees and job applicants, including social security numbers and other government identification numbers. However, this information was compromised by the Data Breach of Snowflakes systems.

The Related Actions all involve the same common nexus of facts.  Snowflake experienced a cyber attack which resulted in the access and exfiltration of sensitive data from more than 160 Snowflake clients. These clients included Advance Auto as along with Neiman Marcus, Ticketmaster, its parent Live Nation, Cricket Wireless and numerous others.  As a result, the consumer data and employee/ job applicant data entrusted to these clients has been exposed.

As a result of this common nexus of facts, the Related Actions, including the Advance Auto cases currently in the Eastern District of North Carolina, should properly be transferred and consolidated in Montana to promote the equitable and efficient handling of all the cases. Centralization allows for streamlining of discovery and potentially other stages of litigation, and permits a scaled approach to cases unlikely to result in disparate results for consumers and other victims of the data breach depending on which Snowflake client received their sensitive information. Plaintiffs in all cases assert largely similar allegations and nearly identical claims against defendants, including negligence, negligence *per se*, breach of implied contract, and state consumer protection act violations.

## II.   ARGUMENT

The panel should transfer cases under Section 1407 where (1) the cases "involve[d] common questions of fact," and (2) transfer would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of" the litigation. *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 699 F. Supp. 3d 1396, 1398 (J.P.M.L. 2023). In doing so, "[t]he Panel must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law." *In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968).

### A.   Transfer is Proper Under 28 U.S.C. § 1407(a) Because the Related Actions Share One or More Common Questions and Arise from the Same Individual Data Breach Involving Snowflake

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceeding." 28 U.S.C. § 1407(a). However, the existence of "some individualized factual

issues… does not negate the common ones." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1362 (J.P.M.L. 2014). "Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite to centralization." *See In re: Park West Galleries, Inc., Litig*., 887 F. Supp. 2d 1385, 1385 (J.P.M.L.2012). "Transferee judges have demonstrated the ability to accommodate common *and individual* discovery tracks, gaining the benefits of centralization without delaying or compromising consideration of claims on their individual merits." *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 597 F. Supp. 2d 1377, 1378 (J.P.M.L. 2009)(emphasis added). The Panel has noted "positive experience[s]" where centralization seems to have facilitated this "dual approach. " *Id.* (*citing In re Vioxx Products Liability Litigation*, 360 F.Supp.2d 1352, 1354 (J.P.M.L. 2005); *In re Bridgestone/Firestone, Inc., ATX, ATX II and Wilderness Tires Products Liability Litigation*, No. 1373, 2000 U.S. Dist. LEXIS 15926, at *7 (J.P.M.L. Oct. 24, 2000)).

In a data breach case earlier this year, the Panel centralized cases after finding all actions arose from a singular breach of one Defendant's software by cyber criminals. *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2024 U.S. Dist. LEXIS 20080, *2 (J.P.M.L. 2024) ("All actions can be expected to share factual questions arising from the January 2023 breach of defendant Fortra's 'GoAnywhere' managed file transfer software, which was targeted by a Russian-linked ransomware group."). In that particular case, over a hundred organizations utilized a transfer software designed by Forta. *See id*. at 5. The Panel also found centralization where Perry Johnson, which managed medical transcription services for various other medical provider defendants, suffered a data breach which compromised the personal information of those provider's patients. *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, 2024 U.S. Dist. LEXIS 20083 (2024).

As explained by the Panel in *Fortra*, all actions could "be expected to share common and complex factual questions surrounding how the Fortra GoAnywhere vulnerability occurred, the unauthorized access and data exfiltration, and Fortra's response to it, which impacted all the various downstream defendant users of the file transfer software and individual plaintiffs." *Id*. at 5. The panel reached this conclusion despite noting there "may be allegations specific to each defendant's role in the breach of a particular plaintiff's data." *Id*. As explained by the Panel, "regardless of whether Fortra is named as a defendant in a particular case" all related actions pose "significant questions about Fortra's role in the ultimate exploitation of the GoAnywhere vulnerability." *Id*.

In contrast, the Panel sometimes has been reluctant to centralize cases involve multiple individualized data breaches particularized to each defendant. *See In re Accellion, Inc. Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1374 (J.P.M.L. 2021) ("Opponents of centralization argue that, rather than a single data breach, there were numerous data breaches of each client defendant, occurring at different times and involving each client defendant's own servers."). In *Accellion*, the Panel ruled that the common issues were secondary, holding "any factual overlap among the actions as to Accellion's FTA product, its vulnerability to attack, and its alleged support of this 'legacy' product may be eclipsed by factual issues specific to each client defendant." *Id*.

The Vogel Action and the McGee Action both arise from a data breach involving unauthorized activity within a third-party cloud database operated by Snowflake and thus, *similar to In re Forta*, "all actions [should] be expected to share common and complex factual questions surrounding how the [Snowflake] vulnerability occurred, the unauthorized access and data exfiltration, and [Snowflake's] response to it, which impacted all the various downstream

defendant users." *See In re Forta File Transfer Software Data Sec. Breach Litig.*, 2024 U.S. Dist. LEXIS 20080, *2 (J.P.M.L. 2024).

This is not a situation where multiple defendants suffered individualized breaches which were each handled differently by Snowflake. *See Accellion*, 543 F. Supp. 3d at 1374 ("Opponents of centralization argue that, rather than a single data breach, there were numerous data breaches of each client defendant… each client defendant's knowledge of the FTA's alleged vulnerability to attack will be unique, as will Accellion's alleged efforts..."). Although factual issues specific to each client defendant may exist, they will take a secondary position to the facts specific to the Snowflake data breach. *See In re Accellion, Inc. Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1374 (J.P.M.L. 2021) (finding that common facts specific to Acellion's handling "numerous data breaches" of multiple "client defendants" were "eclipsed by factual issues specific to each client defendant.").

Further, the mere possibility that issues will arise specific to each defendant should not prevent centralization. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1362 (J.P.M.L. 2014) ("some individualized factual issues… does not negate the common ones."). **"**Although individualized factual issues may arise in each action, such issues do not—especially at this early stage of litigation—negate the efficiencies to be gained by centralization.: *In re Uber Techs., Inc.*, 699 F. Supp. 3d 1396, 1398 (J.P.M.L. 2024) (citing *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017)).

Because the Related Actions contain common questions of fact, the Panel should rule in favor of centralization.

**B. Transfer is Also Proper Under 28 U.S.C. § 1407(a) Because Centralization Serves the Convenience of the Parties and Witnesses and Promotes the Just and Efficient Conduct of the Litigation**

The Panel should centralize cases if it determines a transfer will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  This element is satisfied where discovery is expected to focus on similar common issues.  *In re 23Andme, Inc.*, 2024 U.S. Dist. LEXIS 66972, *2 (J.P.M.L. 2024) (Finding that centralization is proper because "[d]iscovery in all actions will focus on how 23andMe's system was breached, how and when the breach was identified, what security measures 23andMe had in place, and what steps were taken after the data breach was discovered."); *see also In re Perry Johnson & Assocs.*, 2024 U.S. Dist. LEXIS 20083 (2024)(recommending centralization after noting "[d]iscovery concerning how Perry Johnson's system was hacked, how and when the breach was identified, what security measures Perry Johnson and other defendants had in place to protect customer PII and PHI, and what steps it took after discovering the breach likely will be complex and time-consuming" and that "centralization likely will avoid duplicative discovery").

Where discovery is expected to focus on such common questions, "[c]entralization will avoid the possibility of inconsistent pretrial rulings, particularly with respect to class certification." *In re 23Andme, Inc.*, 2024 U.S. Dist. LEXIS 66972, *2. At the same time, the need for some individualized discovery served on specific Defendants does not necessarily defeat centralization. At least one decision from this Panel specifically noted that centralization permits a single judge to "formulate a pretrial program" that "allows for discovery with respect to any non-common issues to proceed concurrently with discovery on common issues." *In re Vioxx*, 360 F.Supp.2d 1352 at 1354; *In re Joseph F. Smith Patent Litigati*on, 407 F. Supp. 1403, 1404 (J.P.M.L. 1976).

The Panel has also found efficiency would *not* be served by centralization where numerous individualized facts "predominated over" common factual issues.  *See, e.g., In re Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376, 1376-77 (J.P.M.L. 2013) (finding individualized factual issues would overwhelm common ones and, therefore, the Panel was "not persuaded that Section 1407 centralization is necessary either to assure the convenience of the parties and witnesses or for the just and efficient conduct of this litigation."); *see also In re Belviq (Lorcaserin HCI) Prods. Liab. Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021) ("[I]ndividualized factual issues concerning causation will predominate and diminish the potential to achieve significant efficiencies in an MDL.").

Centralization also serves the convenience of the parties and witness and promotes just and efficient litigation where the Related Actions are all at an earlier procedural stage of litigation.  *In re Generic Pharms. Pricing Antitrust Litig.*, 2017 U.S. Dist. LEXIS 151228, *4 (J.P.M.L. 2017)("Given the significant discovery that remains, there  is ample scope to eliminate duplication and enhance the convenience of the parties, the witnesses, and the courts through coordinated proceedings in the MDL."); *In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1386 (J.P.M.L. 2020)("Furthermore, there has been no significant activity in any action such that transfer to another district would disrupt its efficient progress.  We find that centralization in this district will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of these actions.").

Centralization is proper because much of the discovery will focus on the same common issues of fact discussed in the first section, such as "how [Snowflake's] system was breached, how and when the breach was identified, what security measures [Snowflake] had in place, and what steps were taken after the data breach was discovered."  *In re 23Andme, Inc.*, 2024 U.S. Dist.

LEXIS 66972, *2 (J.P.M.L. 2024).  Because discovery will likely focus on questions of fact common involving the Snowflake breach, centralization will avoid the possibility of inconsistent pretrial rulings.  *In re 23Andme, Inc.*, 2024 U.S. Dist. LEXIS 66972, *2 (J.P.M.L. 2024) (Finding that centralization is proper because "[c]entralization will avoid the possibility of inconsistent pretrial rulings, particularly with respect to class certification.").

Assuredly, there will need to be *some* discovery conducted against Advance Auto Parts, which is located in North Carolina. The mere fact some discovery will need to take place within North Carolina does not defeat centralization. *See In re Vioxx*, 360 F.Supp.2d 1352 at 1354 (citing *In re Joseph F. Smith Patent Litigation,* 407 F. Supp. 1403, 1404 (J.P.M.L. 1976)(centralization permits a single judge to "formulate a pretrial program" that "allows for discovery with respect to any non-common issues to proceed concurrently with discovery on common issues.") Counsel for Responding Plaintiffs is confident they can handle any discovery or depositions which need to be conducted in North Carolina from its offices, which are also in North Carolina, while the centralized proceedings continue in the District of Montana.

Centralization is also proper because all of the Related Actions are in the early stages of litigation.  All related actions were filed in the previous two months, and counsel for Vogel and McGee does not believe any of the Related Actions have proceeded even to the initial stages of discovery.  Because there has been no significant activity in any of the Related Actions, the Panel should find that centralization serves the convenience of the parties and the witnesses.  *See In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1386 (J.P.M.L. 2020)(Holding "centralization in this district will best serve the convenience of the parties and witnesses" where "there has been no significant activity in any action.").

9

Here, discovery can be expected to focus on common issues of fact and all Related Actions are in the early stages of litigation. Consequently, the Panel should find that centralization serves the convenience of the parties and witnesses and promotes the just and efficient conduct of the litigation.

### C.  The District of Montana is the Proper Forum for Centralization.

In situations where multiple parties are implicated in litigation resulting from a data breach involving the systems of one defendant, proceedings are regularly centralized in the district where that particular defendant's corporate headquarters is located. See *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig.*, 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (Holding that the Central District of California was the most appropriate forum because "Toyota maintains its United States corporate headquarters within this district, and relevant documents and witnesses are likely located there."); *see also In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402, 1407 (J.P.M.L. 2023)(Panel is "persuaded that the District of Massachusetts is the appropriate transferee district" because "[m]ore cases are pending in this district than in any other district," the owner of MOVEit "is headquartered in Burlington, Massachusetts," and "relevant employees likely are based in this district, where potentially relevant databases, documents, witnesses, and other evidence also may be found.").

Snowflake's company headquarters is located in Bozeman, Montana and therefore the most appropriate forum is the District of Montana.  *In re Toyota*, 704 F. Supp. 2d 1379 (J.P.M.L. 2010) The important witnesses are likely to reside in Montana, and important documents, including the Snowflake servers and infrastructure implicated in the breach are likely to be located in Montana. *In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402 (J.P.M.L. 2023). Thus, the Court should centralize the case in the District of Montana.

## IV.    CONCLUSION

As set forth in this Brief, Centralization in the District of Montana is proper will result in a just and judicially efficient resolution of the Related Actions. Responding Plaintiffs can show that the Related Actions all arise from common questions of fact involving the data breach of Snowflake's internal system. Because discovery will focus on these common questions, centralization serves the convenience of the parties and witnesses and promotes the just and efficient conduct of the litigation. Further, the District of Montana is the Most Appropriate Forum because it is where Snowflake is headquartered and where many witnesses and pieces of evidence is located. For these reasons, the other reasons discussed in this brief, and any reasons mentioned in briefs filed by other plaintiffs, the Panel should centralize the Related Actions in Montana.

Respectfully submitted, this the 29th day of August, 2024

/s/ Joel R Rhine_____
Joel R. Rhine (16028)
Ruth A. Sheehan (48069)
John A. Bruno (54775)
Rhine Law Firm, P.C.
1612 Military Cutoff, Suite 300
Wilmington, NC 28403
 (910) 772-9960
jrr@rhinelawfirm.com
ras@rhinelawfirm.com
jab@rhinelawfirm.com

Gary M. Klinger
Milberg Coleman Bryson Philips Grossman,
PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois
(847) 208-4585
GKlinger@milberg.com

Marc E. Dann (Ohio Bar No. 0039425)*
DannLaw

15000 Madison Avenue
Lakewood, OH 44107
Phone: (216) 373-0539
notices@dannlaw.com

Thomas A. Zimmerman, Jr.*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020
tom@attorneyzim.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29th, 2024, I electronically filed the foregoing "PLAINTIFFS CHARLES MCGEE AND GREGORY VOGEL'S RESPONSE IN SUPPORT OF MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS TO THE DISTRICT OF MONTANA PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS" using the Panel's CM/ECF system, which will send a service copy to all registered parties in the action through their counsel's associated email addresses. I further caused true and correct copies of the filing to be served on the following parties via first-class U.S. Mail as Counsel has not yet appeared in the Panel's CM/ECF system:

Kelly Margolis Dagger
Thomas H. Segars
Ellis & Winters, LLP
P.O. Box 33550
Raleigh, North Carolina. 27636
DEFENDANT ADVANCE AUTOPARTS, INC.
and ADVANCE STORES COMPANY, INCORPORATED

This the 29th day of August, 2024.


/s/ Joel R. Rhine
Joel R. Rhine