BEFORE THE UNITED STATES

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: SNOWFLAKE DATA BREACH LITIGATION | MDL NO. 3126 |

**INTERESTED PARTY RESPONSE IN OPPOSITION TO MOTION TO TRANSFER AND CONSOLIDATE ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Interested Party Christopher M. Brain ("Plaintiff") – the Plaintiff in *Brain v. Live Nation Entertainment, Inc., et al.*, Case No. 2:24-cv-06125, pending in the United States District Court for the Central District of California (the "California Action") – submits this Interested Party Response in partial support of the Motion of Emmanuel Chaidez ("Movant"), the plaintiff in *Chaidez v. Snowflake, Inc.*, No. 2:24-cv-00046 (D. Mont.) (the "Chaidez Action") to centralize all Related Actions[1] and transfer them to the United States District Court for the District of Montana (MDL No. 3126, Doc. 1). Plaintiff agrees that the Related Actions should be transferred and centralized for pretrial coordination or consolidation. However, the Panel should transfer the Actions to the Central District of California because it will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation, making it the most appropriate forum.

I.      **THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

Federal civil actions are eligible for transfer pursuant to 28 U.S.C. § 1407 ("§ 1407") if they involve "common questions of fact" subject to discovery. *See* § 1407(a); *In re Kugel Mesh Hernia Patch Products Liability Litigation*, 493 F.Supp.2d 1371, 1372-73 (J.P.M.L. 2007). § 1407 permits transfer and consolidation for pretrial proceedings of civil actions involving common questions of fact that are pending in different districts if the transfer and consolidation

---

[1]     "Related Actions" means the other actions included in MDL 3126.

1

"will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." § 1407.

Plaintiff supports consolidation of the Related Actions because there are common questions of fact that support transfer at this stage. Indeed, a critical question arising from the institution of this motion to transfer is whether, and to what extent, Snowflake is responsible for the data breach, or whether these are all separate data breaches for which responsibility lies with the named defendants other than Snowflake, as noted by plaintiff Marc Reichbart in his Interested Party Response. *See* MDL 3126, Doc. 112. This issue is essential for each party involved in this MDL because it could impact the claims of each plaintiff and any third-party claim by a named defendant. Accordingly, until this common question issue is resolved, likely through extensive discovery, consolidation here will eliminate the "potential for conflicting contemporaneous rulings by coordinate district and appellate courts." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491–92 (J.P.M.L. 1968).[2]

Furthermore, as detailed in the Interested Party Response of plaintiff Faisal Modelina (MDL 3126, Doc. 74), consolidation is appropriate here because "[t]he allegations of all the cases are substantially similar and they all turn on the same factual questions" and "[t]he parties in these actions will necessarily engage in duplicative discovery, especially with respect to Snowflake." *Id.*, at p.7. Consolidation will undoubtedly also reduce the cost of litigation (particularly as it relates to third party discovery) and will conserve the time of the parties, their attorneys, and the courts in avoiding unnecessary duplication. Indeed, for these reasons, among the others, pretrial transfer and consolidation under Section 1407 is appropriate.

II. **THE RELATED ACTIONS SHOULD BE TRANSFERRED TO CALIFORNIA**

---

[2] To the extent that there are questions of fact that are individualized to each "spoke," namely that the Related Actions name various defendants, that fact is not a barrier to centralization. Plaintiff incorporates by reference the same argument as set forth by plaintiff Erin Lewis in her Response. MDL 3126, Doc. 66, at §I.C.

Plaintiff submits that this MDL should be transferred to the United States District Court for the Central District of California, not the District of Montana. When determining the appropriate transferee district, the Panel considers the following factors: (i) where the largest number of cases are pending; (ii) where discovery has occurred; (iii) where cases have progressed furthest; (iv) the site of the occurrence of the common facts; (v) where the cost and inconvenience will be minimized; and (vi) the experience, skill, and caseloads of the available judges. *See* Manual for Complex Litigation (Fourth) § 20.131 (2004). A brief review of these factors supports transfer to the Central District of California.

As to the first factor, while the Central District of California does not have the most filed cases in this MDL, it still has approximately seventeen cases also contains the very first filed case, as averred by plaintiff Modelina and the Caballero/Neblock/Sherman plaintiff group. MDL 3126, Doc. 74; MDL 3126, Doc. 98. Accordingly, this should weigh favorably in the Panel's consideration. As to the next two factors, Discovery has not yet started in any of the Related Actions and each of the Related Actions are at substantially similar procedural postures. Thus, these factors should not be considered at this stage.

As to the fourth factor, these data breaches are reportedly worldwide events. Indeed, the Ticketmaster data breach is reported to have impacted over 560 million individuals worldwide. Accordingly, any number of forums across the globe could arguably be the "site of the occurrence of the common facts." As has been highlighted by a number of interested parties, Snowflake – the purportedly common actor in each of the Related Actions – has numerous addresses and no singular headquarters. However, Snowflake, as identified by the Caballero/Neblock/Sherman plaintiff group, "has deep connections to California," as do other defendants involved in this MDL (*i.e.*, Ticketmaster and Live Nation). MDL 3126, Doc. 98, at p.13.

As to the fifth factor, cost and inconvenience will be minimized by transferring the MDL to the Central District of California. This factor is critical for Plaintiff, a resident of the United Kingdom who will likely be required to travel the furthest of any plaintiff in this MDL to litigate his Action. The difference between traveling to California and traveling to Montana for Plaintiff is huge. Indeed, Plaintiff would be able to get a direct flight from London to Los Angeles with ease as there are eleven direct flights every day. In contrast, however, there are no direct flights whatsoever between London and Montana. In addition, for the U.S.-based plaintiffs, the Central District of California is a convenient venue with numerous airports allowing easy access to the Central District of California from anywhere in the country, as well as numerous hotel accommodations. *See* MDL 3126, Doc. 74, at 10.

Finally, as has been recognized by several other plaintiffs, the Central District of California has highly experienced and skilled judges, capable of handling this complex data privacy MDL. Indeed, the Central District of California not only has extensive experience with complex data privacy actions, namely due to California's Consumer Privacy Act, but also has extensive experience with MDL's, thus making the Central District of California the best-suited and most well-equipped forum to handle this MDL.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff supports the consolidation of the Related Action and submits that they should be transferred to the Central District of California.

DATED: August 30, 2024

By:   */s/ Gregory M. Egleston*
     Gregory M. Egleston
     **GAINEY McKENNA & EGLESTON**
     260 Madison Avenue, 22nd Floor
     New York, NY 10016
     Telephone: (212) 983-1300
     Facsimile: (212) 983-0383
     Email: gegleston@gme-law.com

***Attorneys for Plaintiff***
