BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AT&T INC. CELLULAR CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 3124 |
| IN RE: SNOWFLAKE, INC. DATA SECURITY BREACH LITIGATION | MDL No. 3126 |

**AT&T Inc.'s Supplemental Response in Support of
Centralization of All Snowflake-Related Actions**

Seventy-one lawsuits are pending against Snowflake and its clients Advance Auto Parts, AT&T, Lending Tree, Neiman Marcus, and Ticketmaster in thirteen federal courts across the country. They arise from a common cybersecurity "threat campaign," present inextricably intertwined questions of fact and law, and involve overlapping parties and putative class members. Forming a Snowflake MDL will ensure consistent rulings on common questions affecting common parties, facilitate efficient discovery, and minimize burdens on the judiciary and the parties. For these and other reasons, AT&T and most of the other parties to these proceedings support a hub-and-spoke-style MDL encompassing all actions against Snowflake and its clients arising out of the cybersecurity "threat campaign."[1]

---

[1] *See, e.g.*, Defendant AT&T Inc.'s Resp. in Supp. of Transfer and Centralization and in Favor of the Eastern District of North Carolina, MDL 3126 (J.P.M.L. Aug. 21, 2024), ECF No. 103; Plaintiff Erin Lewis' Resp. in Supp. of Mot. to Transfer, MDL 3126 (J.P.M.L. Aug. 19, 2024), ECF No. 61; Resp. of Interested Party, Faisal Moledina, to Mot. for Transfer and Centralization of Related Actions, MDL 3126

Against these facts, newly appointed leadership counsel in MDL 3114 (MDL 3114 Counsel) belatedly oppose the majority view, arguing that the AT&T cases should be severed and transferred to their MDL pending in the Northern District of Texas, which involves a separate AT&T data incident unrelated to Snowflake.[2] The Panel should reject MDL 3114 Counsel's proposal.

Forcing consolidation of actions involving unrelated data incidents does not create efficiencies or facilitate consistent rulings. Here, under MDL 3114 Counsel's proposal, Snowflake cases against AT&T would proceed in parallel with overlapping cases involving Snowflake and Snowflake clients other than AT&T, heightening the risk of duplicative discovery, inconsistent rulings, and inefficient proceedings. Some MDL 3114 Counsel—who represent plaintiffs in MDL 3114 ***and*** Snowflake plaintiffs in these proceedings—agree and have filed briefs with the Panel supporting the formation of an all-encompassing Snowflake MDL for these very reasons. That position is irreconcilable with MDL 3114 Counsel's proposal.

The Panel should reject MDL3114 Counsel's proposal and consolidate all Snowflake-related cases into a Snowflake MDL.

---

(J.P.M.L. Aug. 20, 2024), ECF No. 74; Interested Party Resp. of Plaintiff Santisha Bryant-Booker in Supp. of Mot. for Transfer and Centralization, MDL 3126 (J.P.M.L. Aug. 21, 2024), ECF No. 100; Interested Party Resp. of Plaintiff Alicia LeDuc Montgomery to Mot. for Transfer and Centralization of Related Actions, MDL 3126 (J.P.M.L. Aug. 21, 2024), ECF No. 104.

[2] MDL 3114 Counsel's Resp. Supporting in Part and Opposing in Part the Mots. to Transfer, MDL 3124 (J.P.M.L. Aug. 29, 2024), ECF 49; MDL 3126 (J.P.M.L. Aug. 29, 2024), ECF 138 (hereafter "MDL 3114 Resp.").

I. **The Snowflake-related claims against AT&T are not similar to the claims litigated in MDL 3114.**

MDL 3114 Counsel argue that the Snowflake-related cases against AT&T should be consolidated with MDL 3114 based on the premise that the AT&T Snowflake incident here is similar to the incident at issue in MDL 3114. But the allegations in the respective actions prove the opposite. The incidents allegedly (1) occurred years apart, (2) involve different environments (one an AT&T system, the other an AT&T workspace on the Snowflake cloud), and (3) concern distinct customer data from largely distinct categories of AT&T customers. And MDL 3114 Counsel provide no support for their assertion that the incidents involved the same threat actors. Given these differences, combining AT&T's Snowflake cases with MDL 3114 will not result in the so-called efficiencies touted by MDL 3114 Counsel.

**First**, the AT&T and Snowflake incidents are independent and occurred years apart. MDL 3114 involves 2019 AT&T data that plaintiffs allege was improperly accessed and first appeared online in August 2021.[3] By contrast, the AT&T Snowflake complaints allege unauthorized access to the Snowflake platform and the data of Snowflake clients, including AT&T, beginning in mid-April 2024.[4]

---

[3] *See, e.g., Carrasco v. AT&T Inc.*, C.A. No. 4:24-cv-00305 (E.D. Tex. Apr. 9, 2024), MDL 3114, ECF 29-9 at ¶¶ 49–50 and n. 3; *Sanford v. AT&T Inc.*, C.A. No. 2:24-cv-00261 (E.D. Tex. Apr. 19, 2024), MDL 3114, ECF 61-2 at ¶¶ 49, 50 and n. 3.

[4] *See, e.g., Hornthal v. Snowflake, Inc., AT&T Inc., and AT&T Mobility, LLC*, C.A. No. 2:24-cv-00068 (D. Mt. July 25, 2024), MDL 3126, ECF 1-18 at ¶ 35; *Lewis v. Snowflake, Inc. and AT&T Inc.*, C.A. No. 2:24-cv-00064 (D. Mt. July 23, 2024), MDL 3126, ECF 1-13 at ¶¶ 3, 5.

**Second**, the incidents involve different systems with different controls. The complaints in MDL 3114 allege unauthorized access to *AT&T's* systems.[5] But the AT&T Snowflake complaints do not involve AT&T's systems. Instead, they allege a "threat campaign" targeting at least *165 Snowflake customer cloud environments—* of which AT&T was just one.[6]

**Third,** the incidents involve distinct data and groups of customers. MDL 3114 involves allegations of unauthorized access to personal information, including names, addresses, and some Social Security numbers.[7] In contrast, the AT&T Snowflake complaints allege unauthorized access to AT&T call logs,[8] not the personal information at issue in MDL 3114.[9] And in MDL 3114, fewer than 5% of

---

[5] *See, e.g.*, *Collier v. AT&T Inc.*, C.A. No. 3:24-cv-00782 (N.D. Tex. Apr. 1, 2024), MDL 3114, ECF 1-12 at ¶ 40 (alleging "[AT&T's] system . . . was ultimately affected by the Data Breach"); *March v. AT&T Inc.*, C.A. No. 3:24-cv-00758 (N.D. Tex. Mar. 31, 2024), MDL 3114, ECF 1-15 at ¶ 93 (alleging the incident involved "an unauthorized third party . . . access[ing] [AT&T's] database and system").

[6] *See, e.g.*, *Rason v. Snowflake, Inc. and Ticketmaster, L.L.C.*, C.A. No. 2:24-cv-00076 (D. Mt. Aug. 6, 2024), MDL 3126, ECF 20-7 at ¶¶ 7, 37, 41; *Bryant-Booker v. Snowflake Inc.*, C.A. No. 2:24-cv-00066, MDL 3126, ECF 1-16 at ¶¶ 5, 28, 33.

[7] *See, e.g.*, *Burris v. AT&T Inc.*, C.A. No. 3:24-cv-01208 (N.D. Tex. May 20, 2024), MDL 3114, ECF 133-6 at ¶ 13; *Unruh v. AT&T Inc.*, C.A. No. 1:24-cv-01414 (N.D. Ga. Apr. 2, 2024), MDL 3114, ECF 8-3 at ¶ 1.

[8] The data at issue does not contain the content of calls or texts, personal information such as Social Security numbers, dates of birth, or other personally identifiable information. *See* AT&T Inc. Form 8-K, Item 1.05 (July 12, 2024), *available at* https://www.sec.gov/Archives/edgar/data/732717/000073271724000046/t-20240506.htm.

[9] *See, e.g.*, *Winger v. AT&T Inc.*, C.A. No. 3:24-cv-01797 (N.D. Tex. July 12, 2024), MDL 3126, ECF 64-3 at ¶¶ 1–2; *Schulte v. AT&T Inc. and AT&T Mobility, LLC*, C.A. No. 3:24-cv-07818 (D.N.J. July 16, 2024), MDL 3126, ECF 64-7 at ¶ 11.

4

potentially impacted AT&T customer accounts were wireless, whereas here the vast majority of allegedly impacted AT&T customer accounts relate to the wireless businesses of AT&T Mobility and Cricket Wireless.[10]

**Fourth**, MDL 3114 Counsel speculate that the data incidents alleged in MDL 3114 and in this proceeding were "potentially caused by the same threat actor."[11] But MDL 3114 Counsel provide no facts supporting their conjecture, different individuals claimed responsibility for each incident, and nothing in the information available to AT&T substantiates any connection between the two.

## II. Breaking up Snowflake-related actions ensures inefficiency and risks inconsistent rulings.

Separating AT&T matters from other Snowflake matters ensures inefficiency and creates a significant risk of inconsistent rulings as to overlapping putative classes—exactly the opposite of what an MDL is intended to prevent.

In addition to preventing duplicative discovery and conserving resources, the primary purpose of the MDL is to "prevent inconsistent pretrial rulings."[12] Indeed, this Panel has recognized the "potential for conflicting or overlapping class actions" as "one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings."[13]

---

[10] *See* AT&T Inc.'s Supp. Resp. in Supp. of Transfer to and Centralization in the Northern District of Texas, MDL No. 3114 (J.P.M.L. May 2, 2024), ECF 93 at 1.

[11] MDL 3114 Resp. at p. 2.

[12] *In re: H&R Block Mortg. Corp. Prescreening Litig.*, 435 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006).

[13] *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970).

Here, issues ranging from Snowflake's duties to customers; Snowflake's conduct and security practices; how the "threat campaign" against Snowflake clients occurred; Snowflake's response to the incident; the security features Snowflake made available to its customers; and Snowflake's discovery obligations will necessarily be addressed in any Snowflake-related litigation—including litigation pending against AT&T.

The Snowflake-related allegations at issue in this proceeding are illustrative of this point. For example, Plaintiffs Richard Olivieri and Lauren Woon—purported AT&T customers suing Snowflake (not AT&T) in the District of Montana—allege that the theft of their AT&T call logs "was a direct result of [Snowflake's] failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect the Personal Information exfiltrated."[14] They propose to represent a nationwide class and two state subclasses of "[a]ll individuals…whose Personal Information was compromised as a result of the Snowflake Data Breach," which would include AT&T customers, even if AT&T is not named as a defendant.

If the Snowflake cases naming AT&T were severed from the other Snowflake cases, multiple courts would have to preside over discovery into these issues, hear argument on them, and ultimately rule on them. In addition to dealing with duplicative proceedings, any inconsistent rulings could result in inconsistent

---

[14] Olivieri and Woon's First Amended Class Action Complaint, C.A. No. 2:24-cv-00056 (D. Mt. Aug. 9, 2024), ECF No. 21 at ¶ 23.

outcomes for the same putative class members on the same questions—exactly what an MDL is supposed to avoid.

MDL 3114 Counsel's proposal to sever AT&T's Snowflake claims and create parallel Snowflake proceedings would all but guarantee inefficiency and the risk of inconsistency.

### III.   MDL 3114 Counsel's Snowflake clients support the formation of MDL No. 3126.

Some lawyers who are part of MDL 3114 Counsel represent plaintiffs in both MDL 3114 (as leadership counsel) and in these proceedings and have adopted inconsistent positions on consolidation. As MDL 3114 Counsel, these lawyers argue that AT&T's Snowflake cases should be severed and consolidated with MDL 3114. But when untethered from the leadership court, they argue the exact opposite, filing briefs on behalf of plaintiffs in this proceeding arguing for the formation of a Snowflake MDL that encompasses all of Snowflake's clients, including AT&T. These positions are irreconcilable.

MDL 3114 Counsel, for example, downplay the existence—and importance—of common issues presented by Snowflake's involvement in the Snowflake cases.[15] But at least one MDL 3114 Counsel recently represented to the Panel that those common issues are central to all of the Snowflake cases, stating:

> [T]he class actions that have been filed against Snowflake and its customers, such as Advance Auto Parts, AT&T, Santander, and Ticketmaster, stem from a common set of factual allegations, namely [Snowflake's] failure to adequately safeguard the sensitive information of millions of individuals housed on Snowflake's data cloud

---

[15] MDL 3114 Resp. at p. 4.

7

> environment. ***At their core, the related actions share common and overlapping factual allegations relating to common conduct by a common actor—Snowflake—that lead to a common data security incident.***[16]

Counsel continued that "[t]his case is no different" from "other hub-and-spoke data breach cases" and described Snowflake as "the common denominator[,]" without excepting AT&T.[17] Indeed, multiple MDL 3114 Counsel—who now claim that AT&T's Snowflake cases should be severed and consolidated into MDL 3114—have repeatedly stated their support for "the centralization of all actions related to the Snowflake data breach, including those brought against Snowflake's customers[,]"[18] and have "agree[d] . . . that the numerous overlapping cases should be transferred to a single district for pretrial proceedings."[19]

---

[16] Interested Party Resp. of Plaintiff Santisha Bryant-Booker in Supp. of Mot. for Transfer and Centralization of Related Actions, MDL No. 3126 (J.P.M.L. Aug. 21, 2024), ECF No. 100, pp.1–2 (emphasis added).

[17] *Id.* at 2–3; *see also* Giangiulio Complaint, MDL 3126 (J.P.M.L. July 18, 2024), ECF 1-11 at ¶ 13 (alleging Snowflake "failed to take necessary steps to safeguard this data, causing cybercriminals to obtain Plaintiff's PII in the Data Breach"); Olivieri and Woon's First Amended Class Action Complaint, C.A. No. 2:24-cv-00056 (D. Mt. Aug. 9, 2024), ECF No. 21 at ¶ 2 ("This class action arises out of Snowflake's failure to secure its cloud storage systems, enabling criminals to access and misuse highly sensitive Private Information from Snowflake's cloud storage and systems . . . provided to companies that, in turn, relied on Snowflake to store and protect such Private Information.").

[18] Interested Party Resp. of Plaintiff Santisha Bryant-Booker in Supp. of Mot. for Transfer and Centralization of Related Actions, MDL No. 3126 (J.P.M.L. Aug. 21, 2024), ECF No. 100, p. 4.

[19] Resp. of Amanda Schwartz in Supp. of Mot. for Transfer and Centralization of Related Actions, MDL 3126 (J.P.M.L. Aug. 21, 2024), ECF No. 105, p. 1.

In short, MDL 3114 Counsel's push to sever the AT&T cases and consolidate with MDL 3114 is irreconcilable with their own arguments and positions in this proceeding. The Panel should reject MDL 3114 Counsel's proposal for the very reasons these attorneys identified in arguing for an all-encompassing Snowflake MDL.

## IV. AT&T supports centralization of MDL 3126 in North Carolina, or alternatively, in Montana.

AT&T supports a global Snowflake MDL that encompasses all related hub-and-spoke actions as proposed in MDL 3126, wherever that MDL is formed. AT&T supports transfer to the Eastern District of North Carolina—home to Advance Auto Parts—given the nine matters already consolidated there, favorable docket conditions, initial efforts taken by the Court to organize matters, and the relative convenience for all parties. Alternatively, AT&T supports transfer to the District of Montana, home to Snowflake and many of the lawsuits, although less convenient than other districts. AT&T's position is consistent with this Panel's previous orders centralizing hub-and-spoke MDLs in either the home of the hub[20] or the home of a spoke.[21]

---

[20] *In re MOVEit Customer Data Sec. Breach Litig.*, MDL No. 3083, 699 F. Supp. 3d 1402, 1407 (J.P.M.L. 2023).

[21] *In re Fortra File Transfer Software Data Sec. Breach Litig.*, MDL No. 3090, 2024 WL 436478, at *2 (J.P.M.L. Feb. 5, 2024).

9

**CONCLUSION**

The related actions filed to date against Snowflake and ***all*** its clients share common questions of law and fact, and consolidation and transfer will promote the just and efficient conduct of those actions. MDL 3114 Counsel's proposal should be rejected because it would result in inefficient, duplicative, and potentially inconsistent proceedings, thereby defeating the purposes of consolidation.

Dated: September 11, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ Gilbert S. Keteltas*
　　　　　　　　　　　　　　　　　　　　　Gilbert S. Keteltas
　　　　　　　　　　　　　　　　　　　　　BAKER HOSTETLER LLP
　　　　　　　　　　　　　　　　　　　　　1050 Connecticut Avenue, NW, Ste. 1100
　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20036
　　　　　　　　　　　　　　　　　　　　　Tel.: (202) 861.1530
　　　　　　　　　　　　　　　　　　　　　Fax: (202) 861.1783
　　　　　　　　　　　　　　　　　　　　　Email: gketeltas@bakerlaw.com

　　　　　　　　　　　　　　　　　　　　　*Attorney for Defendant AT&T Inc.*