**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE SNOWFLAKE, INC. DATA SECURITY BREACH LITIGATION | **MDL NO. 3126** |

**PLAINTIFF MARI MILLER'S RESPONSE IN SUPPORT OF MOTION FOR
CONSOLIDATION AND TRANSFER**

- i -

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. RELEVANT BACKGROUND ....................................................................................... 1
III. LEGAL STANDARD ...................................................................................................... 2
IV. ARGUMENT ................................................................................................................... 2
    A. A common factual issue across every Data Breach case is Snowflake as a wrongful actor. ..................................................................................................... 2
    B. The District of Montana is the most appropriate forum because Snowflake is headquartered there. ........................................................................................ 4
    C. Chief Judge Morris has ample relevant experience to manage this MDL. ............ 6
V. CONCLUSION ................................................................................................................ 7

I. **INTRODUCTION**

Plaintiff Mari Miller respectfully submits this response in support of Plaintiff Emmanuel Chaidez's motion to transfer and centralize all related actions in the District of Montana, where Defendant Snowflake Inc. ("Snowflake") is headquartered. ECF No. 1. Snowflake's deficient cybersecurity, which permitted hackers to obtain millions of Americans' personal information, across more than one hundred of Snowflake's customers, is the common factual thread running through the patchwork of cases before the Panel. The District of Montana is the most appropriate forum for centralization.

II. **RELEVANT BACKGROUND**

Each case before the Panel relates to a breach of Snowflake's cloud environment that caused the theft of consumer data from many of its institutional customers (the "Data Breach").[1] Snowflake and its customers failed to adhere to basic cybersecurity protocols and allowed hackers to use stolen employee credentials to enter its systems and remove troves of personal information without detection. AT&T was one such Snowflake customer and for a six-month period in 2022, "nearly all" of its customers' basic call and text data was stolen and listed on the dark web for sale.[2] Critically, this breach harmed both AT&T subscribers and non-AT&T subscribers, such as Plaintiff Miller, who texted or called an AT&T subscriber. Compl. ¶ 1. Like Plaintiff Miller, tens of millions of non-AT&T subscribers had their personal information compromised in the Data Breach. She seeks to represent a class composed of all non-AT&T customers who were affected in *Miller v. Snowflake Inc. et al.*, No. 2:24-cv-94 (D. Mont).

---

[1] Compl., *Miller v. Snowflake Inc., AT&T Inc., and AT&T Mobility, LLC*, No. 2:24-cv-00094-BMM (D. Mont.) (Sept. 3, 2024), ECF No. 1, ¶¶ 76-77 ("Compl.").
[2] AT&T, *AT&T Addresses Illegal Download of Customer Data* (July 12, 2024), https://about.att.com/story/2024/addressing-illegal-download.html.

### III.  LEGAL STANDARD

When multiple cases "involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407. At bottom, however, "the objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Manual for Complex Litigation* § 20.131 (4th ed. 2004).

### IV.  ARGUMENT

#### A.  **A common factual issue across every Data Breach case is Snowflake as a wrongful actor.**

At least 71 cases have been filed related to the Data Breach against either (or both of) Snowflake and its institutional customers, including AT&T and Advance Auto Parts Inc. and Advance Stores Company, Inc. ("Advance Defendants").[3] Snowflake argues that consolidation is not warranted because these cases involve "a series of *separate* intrusions" and there is "*no* evidence suggesting the unauthorized access was caused by a vulnerability" in its platform. Based on this purported absence of evidence, Snowflake argues that it is not the "hub" of any data breach and that these matters should instead be consolidated in the home districts of each respective defendant. ECF No. 107 at 1, 6 (emphasis in original). Snowflake is wrong.

For one, Snowflake's argument against nationwide consolidation is undermined by its own public statements. According to a publically-available Snowflake document, it and its

---

[3] ECF No. 182 ("Seventy-one lawsuits are pending against Snowflake and its clients . . . in thirteen federal courts across the country."). Other defendants have taken no position on this motion. *See, e.g.*, ECF No. 127 (Neiman Marcus Group "agrees that some consolidation is appropriate, though it does not take a position on the form that consolidation should take."); ECF No. 101 (Ticketmaster LLC and Live Nation Entertainment Inc. "take no position as to the Chaidez Motion.").

customers have a "shared responsibility" for adopting "industry best practices" to limit access to information by users of the platform.[4] One of these industry best practices is implementation of multi-factor authentication to prevent unauthorized access to sensitive customer data.[5] Despite Snowflake's acknowledgement of its shared responsibility with its customers to implement those practices, Snowflake never required its customers to implement multi-factor authentication. Predictably, the lack of mandatory multi-factor authentication in customer accounts was a "primary factor" leading to the Data Breach according to Snowflake.[6] This presents common questions involving Snowflake in every case, including: (1) whether Snowflake and its targeted customers failed to exercise due care by mandating use of multi-factor authentication to protect this sensitive data and (2) what their respective apportionment of responsibility was in failing to do so.[7]

No party, plaintiffs or non-Snowflake defendants, disputes Snowflake's central role in this case. *See* AT&T Resp., ECF No. 103, at 7 (AT&T response) ("There is simply no way to address common questions about Snowflake's alleged responsibilities without reference to a Snowflake client's alleged duties and obligations."); Advance Def.'s Resp., ECF No. 90 at 1 ("All of these actions arise from an April 2024 data breach of the systems of Snowflake, Inc., which is named as a defendant in some of the actions."). Thus, Snowflake will be a "hub" in this litigation. Consolidating these matters now, before any significant discovery has commenced,

---

[4] Snowflake Inc., *Shared Responsibility Model*, https://www.snowflake.com/en/resources/report/snowflake-shared-responsibility-model/ (last visited Sept. 9, 2024).

[5] *Id*. at 3 (directing customers to "use secure authentication methods with MFA" and "[f]ollow industry best practices for securing the endpoints connecting to Snowflake").

[6] Mandiant & Snowflake Inc., Google Cloud, *UNC5537 Targets Snowflake Customer Instances for Data Theft and Extortion* (June 10, 2024), https://cloud.google.com/blog/topics/threat-intelligence/unc5537-snowflake-data-theft-extortion.

[7] Compl. ¶¶ 95-105.

would preclude duplicative discovery disputes and inconsistent rulings in overlapping cases. The Panel recognized the efficiencies gained from centralizing a data breach involving a "hub" defendant like Snowflake last year in *In re MOVEit*, holding that "[c]entralization offers substantial opportunities to streamline pretrial proceedings; reduce duplicative discovery and conflicting pretrial obligations; [and] prevent inconsistent rulings on common *Daubert* challenges and summary judgment motions[.]"

## B. The District of Montana is the most appropriate forum because Snowflake is headquartered there.

Plaintiff Miller agrees with the plurality of responses filed to this docket that Montana is the most convenient and appropriate forum.[8] Snowflake is the common thread and it is headquartered in Bozeman, "where [Snowflake's] Chief Executive Officer and Chief Financial Officer are based."[9] In light of this, consolidation in the District of Montana makes the most sense, as its documents and witnesses may be found in that district. *See, e.g.*, *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372, 1374 (U.S. Jud. Pan. Mult. Lit. 2023) ("[S]ince [the company owning the breached network] is headquartered there, relevant evidence and witnesses likely will be in this district."). The Panel took this approach in *In re MOVEit*, where it ordered transfer of the centralized matter where the "hub" of the data breach resides:

> [The Panel is] persuaded that the District of Massachusetts is the appropriate transferee district for these cases. More cases are pending in this district than in any other district, and the owner of the [breached] file transfer software . . . is headquartered in Burlington, Massachusetts. Relevant employees likely are based in this district, where potentially relevant databases, documents, witnesses, and other evidence also may be found.

---

[8] *See, e.g.*, ECF Nos. 61, 76, 80, 81, 87, 88, 94, 100, 104, 105, 112, 117, 126, 132, & 171.
[9] Snowflake Inc., 2023 Form 10-K, https://d18rn0p25nwr6d.cloudfront.net/CIK-0001640147/ba7caf53-f000-4fc0-b8a3-ef379d21b99d.pdf.

*In re MOVEit*, 699 F. Supp. 3d at 1407. Transfer and consolidation of these cases in the home district of a single defendant, such as AT&T or Advance Auto Parts Inc., as opposed to the common defendant, Snowflake, would only create efficiencies for that defendant alone, rather than all parties equally.

As others have noted, the District of Montana is also relatively uncongested and "underutilized as a transferee district." *In re: Lending Tree, LLC, Customer Data Sec. Breach Litig.*, 581 F. Supp. 2d 1367, 1368 (U.S. Jud. Pan. Mult. Lit. 2008). The below table summarizes statistics from the National Judicial Caseload Profile as of June 30, 2024 for each district proposed as a transferee district:[10]

| Proposed Transferee District | Actions per Judgeship (Civil) | Months from Filing to Trial (Civil) | Number of Civil Cases More than Three Years Old |
|---|---|---|---|
| D. Mont. | 206 | 21.2[11] | 88 |
| C.D. Cal. | 584 | 30.4 | 943 |
| N.D. Cal. | 546 | 48.9 | 3,779 |
| D. Del. | 393 | 32.9 | 324 |
| E.D. N.C. | 672 | 31.2[12] | 216 |
| W.D. Okla. | 219 | 24.5[13] | 70 |
| E.D. Tex. | 382 | 21.6 | 261 |
| N.D. Tex. | 452 | 19.8 | 443 |

As shown above, the only district that is fairly comparable to the District of Montana across these statistics is the Western District of Oklahoma, but that district has no efficiency-generating

---

[10] U.S. Courts, Nat'l Jud. Caseload Profile, U.S. District Courts – Federal Court Management Statistics Profiles (June 30, 2024), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2024.pdf.

[11] The most recent data available for this statistic is from June 30, 2022.

[12] The most recent data available for this statistic is from June 30, 2023.

[13] The most recent data available for this statistic is from June 30, 2022.

nexus at all to any party, including the named plaintiffs who seek transfer there.[14]

### C. Chief Judge Morris has ample relevant experience to manage this MDL.

Chief Judge Brian Morris of the District of Montana recently ordered the consolidation of twenty current cases and all future cases related to the Data Breach before him. *Leal v. Snowflake, Inc.*, No. 2:24-cv-46 (Sept. 3, 2024), ECF No. 28. The active judicial management that Chief Judge Morris has exercised thus far is well-suited to this case. *See, e.g.*, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, MDL No. 3090, 2024 WL 436478, at *2 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2024) (transferring cases to district that has "[m]ore cases . . . pending . . . than in any other district," and where judge took "preliminary steps to organize this litigation.").

Chief Judge Morris also possesses ample relevant experience that would make him a strong choice to manage this MDL. Chief Judge Morris has served as a District Court Judge since 2013 and as Chief Judge since 2020.[15] Prior to his appointment to the federal bench, he also served as a Justice on the Montana Supreme Court for eight years, where he authored nearly 500 opinions.[16] It would benefit all parties if Chief Judge Morris could leverage his seventeen years of judicial experience in this matter. Further, his prior service on the Montana Supreme Court will be a benefit to the data breach claims in this case, as they essentially sound in contract, common law tort, or state consumer protection statutes, all of which are traditionally matters of state law.

---

[14] *See* Wilkinson Compl., ECF No. 1-9 ¶ 18 (Wilkinson Compl.) (named plaintiff is resident of Tennessee); No. 1-31 ¶¶ 18-22 (named plaintiffs are residents of California and Washington).
[15] U.S.D.C., D. Mont., *Chief Judge Brian Morris Chambers*, https://www.mtd.uscourts.gov/chief-judge-brian-morris-chambers (last visited Sept. 9, 2024).
[16] U.S. Senate Jud. Comm., Response of Brian Morris Nominee for the United States District Court for the District of Montana To Questions for the Record from Senator Chuck Grassley (2013), https://www.judiciary.senate.gov/imo/media/doc/072413QFRs-Morris.pdf.

In their responses, AT&T and the Advance Defendants make much of similar consolidation of Data Breach cases before Judge Richard E. Myers, II of the Eastern District of North Carolina, but eight more cases have been consolidated in the District of Montana. *In re Advance Stores Co., Inc., Data Breach Litig.*, 5:24-cv-352-M-RN (E.D.N.C.) (listing twelve consolidated cases); ECF No. 90 at 2 (Advance Defendants); ECF No. 103 (AT&T). Further, the Panel should be aware that the Camp Lejeune Justice Act of 2022 mandates that the Eastern District of North Carolina is the "exclusive jurisdiction" for all cases related to Camp Lejeune water contamination cases.[17] These claims have significantly impacted the caseload of the four judges in that district, including Judge Myers who has been personally assigned 505 out of the 2,037 filed cases as of August 20, 2024. The full impact of that caseload is not reflected in the National Judicial Caseload Profile statistics cited above either, as plaintiffs in those actions have also filed 546,600 administrative claims with the U.S. Navy, which may still be filed as cases in that district.[18] The District of Montana is therefore a superior district to the Eastern District of North Carolina, even taking Judge Myers consolidation efforts into account.

## V.     CONCLUSION

The Panel should grant Plaintiff Chaidez's motion to consolidate and transfer these matters to the District of Montana.

---

[17] U.S.D.C., E.D.N.C., *Information Concerning Camp Lejeune Water Litigation*, https://www.nced.uscourts.gov/attorney/clwl.aspx (last visited Sept. 11, 2024).

[18] Emily Field, *500,000 Camp Lejeune Cases Filed With The Navy*, Law360 (Aug. 21, 2024), https://www.law360.com/articles/1872263; Joint Status Report, *In re: Camp Lejeune Water Litig.*, No. 7:23-cv-897 (Aug. 20, 2024), ECF No. 277.

Dated: September 13, 2024                Respectfully submitted,

                                         By: */s/ Jason L. Lichtman*

                                         Jason L. Lichtman
                                         LIEFF CABRASER HEIMANN & BERNSTEIN
                                         250 Hudson Street, 8th Floor
                                         New York, NY 10013-1413
                                         (212)355-9500
                                         jlichtman@lchb.com

                                         Amy E. Keller
                                         DICELLO LEVITT LLP
                                         Ten North Dearborn St., Sixth Floor
                                         Chicago, IL 60602
                                         (312)214-7900
                                         akeller@dicellolevitt.com

                                         Jesse Kodadek
                                         Elliott McGill
                                         PARSONS BEHLE & LATIMER
                                         127 East Main Street, Suite 301
                                         Missoula, MT 59802
                                         (406)317-7220
                                         jkodadek@parsonsbehle.com
                                         emcgill@parsonsbehle.com


                                         *Attorneys for Plaintiff Mari Miller and the Proposed Class*